# The Chicago and Northwestern Railway Company

*v.*

## The City of Chicago.

*Filed at Ottawa January 18, 1892.*

1. RAILROAD COMPANY—*duty to construct and maintain crossings—streets laid out after act of 1874.* The provisions of section 8 of the act relating to the fencing and operating of railroads, passed in 1874, in requiring that railroad companies shall construct and maintain the highway and street crossings, and the approaches thereto, within their respective rights of way, include streets to be thereafter laid out or extended, as well as then existing streets.

2. This section (8) does not require railroad companies to reconstruct the crossings already made by the municipal authorities,—it is sufficient to maintain them; but it requires each of them to construct any railroad crossing which may thereafter be made necessary by the building of its own road or by the opening of a new street.

3. SAME—*failure to construct and maintain crossings.* By section 11 of the act of 1874, if the railroad company fails to construct and maintain the street crossings and their approaches, after being notified so to do, it shall not only be liable for the expenses of the municipal authorities in that behalf, but it shall be subject to a fine.

4. SAME—*power of city to extend street under or through—paragraph 89, section 1, article 5, Cities and Villages act.* Section 8 of the act of 1874, relating to the fencing and operation of railroads, does not necessarily operate as a repeal of paragraph 89 of section 1, article 5, of the act relating to cities and villages, which gives a city power to extend any street, etc., under or through any railroad track, right of way or land of any railroad company, and provides that where no compensation is made to such company the city shall restore such railroad track, right of way or land to its former state, or in a sufficient manner not to impair its usefulness.

5. This paragraph confers the power on the city council to extend any street across the railroad right of way. It authorizes the city, by condemnation, to obtain the use of a part of the railroad right of way, "subject to the rightful use of the railroad company thereof." The provision which requires the railroad company to construct and maintain the crossing does not conflict with the provision which authorizes the city to use such crossing, and specifies how such use may be obtained.

6. SAME—*right to extend public highways across—exercise of police power over.* The requirements of section 8 of the act of 1874, in relation to the fencing and operating of railroads, that railway companies shall construct and maintain the highway and street crossings, and the approaches thereto, within their respective rights of way, are nothing more than a police regulation, having for its object the protection of life and property of the people. The police power of the State extends to the protection of the lives, health and property of its citizens.

7. Railroads are public highways, and in their relations as such, to the public, are subject to legislative supervision, though the interests of their stockholders are private property. Every railway company takes its right of way subject to the right of the public to extend the public highways and streets across such right of way. Railroad companies, in their relations to highways and streets which intersect their rights of way, are subject to the control of the police power of the State.

8. SAME—*right to compensation for obedience to police regulations.* It is well settled that neither a natural person nor a corporation can claim damages on account of being compelled to render obedience to a police regulation designed to secure the common welfare. On this principle it is held that railway corporations may be required to fence their tracks, to put in cattle-guards, to place upon their engines a bell, and to do other things for the protection of life and property, although their charters contain no such requirement.

9. Uncompensated obedience to a regulation enacted for the public safety, under the police power of the State, is not a taking or damaging without just compensation of private property, or of private property affected with a public interest.

10. SAME—*compensation for extending streets across.* Paragraph 89 in the City act implies that there may be cases where the railroad company is entitled to compensation, and cases where it is entitled to no compensation. In the extension of streets over railroad lands other than tracks or rights of way, and in the construction of sewers under or through railroad rights of way, serious damage may be done, which may require compensation or restoration.

11. But where the approaches to the crossing are graded, and planks are laid between the rails to make an even surface for the passage of persons and teams, and gates are erected to delay such passage until trains pass, there is no part of the track or right of way or land to be restored to its former state, nor is the usefulness of the railroad in any way impaired.

12. EMINENT DOMAIN—*extending street across railroad track—measure of damages.* Where a public street is extended across a railroad right of way and track, not the grading of the approaches, the planking between the rails or the making of gates, but the use of the crossing by

the public, may result in the stoppage or slower movement of trains, and in the increased danger of accidents; but the law allows no compensation or damages for these inconveniences.

13. In a condemnation proceeding by a city to open or extend a street across a railroad already constructed, the company owning such railroad is not entitled, as a part of its just compensation, to the amount of its expenses in constructing and maintaining the street crossing, nor for the delay occasioned to trains, or the increased danger of loss by accidents. No compensation is allowed for the performance of duties required under the police power.

14. Where a city does not seek to condemn the land belonging to a railway company as its right of way, or to prevent the use of the tracks and right of way by the company, the just compensation to be paid by the city is not the value of the land where the street is to cross, nor is it the value of the use of the property for railroad purposes.

15. So far as the taking of the strip for street purposes is concerned, the measure of the compensation will be the amount of decrease in value of the use for railroad purposes which will be caused by the use for the purposes of a street, such use for the purposes of a street being subject to the use of the company for railroad purposes.

16. Same—*former decision construed.* The case of *Illinois Central Railroad Co.* v. *City of Bloomington,* 76 Ill. 447, holding that a city could not, on extending a street over a railroad track, compel the railroad company to pay for grading the approaches of the new street at the crossing, does not decide the question whether, after the city has made the necessary improvement, the railway company may not be required, as a police regulation, to keep the crossing in repair.

Appeal from the Circuit Court of Cook county; the Hon. Francis Adams, Judge, presiding.

Mr. W. C. Goudy, for the appellant:

The railway companies were entitled to just compensation for the land taken. Their property was private, and as such protected. *Railroad Co.* v. *Railway Co.* 97 Ill. 516.

The compensation should not be decreased because of the supposed obligation of the defendants to incur these expenses in obedience to police regulation. *Hyslop* v. *Finch,* 99 Ill. 182; *Grand Rapids* v. *Railroad Co.* 58 Mich. 641; *Railway Co.* v. *Hough,* 61 id. 507; *People* v. *Railroad Co.* 52 id. 277; *Railroad Co.* v. *Plymouth Co.* 14 Gray, 160; *State* v. *Mayor,* 51

N. J. L. 428; *Railroad Co.* v. *Railroad Co.* 121 Mass. 124; *State* v. *District Court,* 42 Minn. 247; *State* v. *Railroad Co.* 43 id. 524; *Railroad Co.* v. *Railroad Co.* 105 Ill. 110; *Railroad Co.* v. *Railroad Co.* id. 400.

The court erred in not passing upon the question of damage to property not taken.

That a railway company may recover compensation where a street is laid across its track and right of way, see *Railroad Co.* v. *Plymouth Co.* 14 Gray, 155; *Crossly* v. *O'Brien,* 24 Ind. 325; *Railroad Co.* v. *Detroit,* 49 Mich. 47; *Grand Rapids* v. *Railroad Co.* 58 id. 641; *Railroad Co.* v. *Hough,* 61 id. 507; *Railroad Co.* v. *Deering,* 78 Me. 61; *Kansas City* v. *Railroad Co.* 102 Mo. 633. The following cases possibly hold a different view: *Railway Co.* v. *Sharpe,* 38 Ohio St. 150; *Railroad Co.* v. *President,* 5 Lans. 461; *Railroad Co.* v. *County Comrs.* 45 Kan. 394; *Railroad Co.* v. *Dyer Co.* 87 Tenn. 712; *Cooke* v. *Railroad Co.* 133 Mass. 185.

Mr. John S. Miller, for the appellee:

As to the powers of the legislature over railroads, under the police power, see *Railroad Co.* v. *Commissioners,* 79 Me. 394; *Railroad Co.* v. *Railroad Co.* 97 Ill. 516; *Railroad Co.* v. *Willenborg,* 117 id. 208; *State* v. *Mississippi,* 101 U. S. 814; *Fertilizing Co.* v. *Hyde Park,* 70 Ill. 634; 97 U. S. 659; *Thorp* v. *Railroad Co.* 27 Vt. 140; *Railroad Co.* v. *Railroad Co.* 105 Ill. 405; *Snell* v. *Chicago,* 133 id. 413; *Railway Co.* v. *Railway Co.* 30 Ohio St. 604.

Paragraph 89 of section 65 of the act of 1872 gave to the city power to extend streets across railroad tracks without compensation. *Railroad Co.* v. *Bloomington,* 76 Ill. 447; *Railroad Co.* v. *Railroad Co.* 105 id. 406; *Railroad Co.* v. *Deering,* 78 Me. 61.

No one is entitled to compensation for obedience to laws passed as police regulations. *Railroad Co.* v. *Loomis,* 13 Ill. 548; *Railroad Co.* v. *Dill,* 22 id. 264; *Railroad Co.* v. *McClel-*

*land,* 25 id. 140; *Railway Co.* v. *Railway Co.* 105 id. 110; *Railroad Co.* v. *Railroad Co.* id. 388.

Mr. Chief Justice Magruder delivered the opinion of the Court:

This is an appeal from the judgment of the Circuit Court of Cook County fixing the compensation for property taken and damaged by the City of Chicago for the extension of West Taylor Street across the right of way of the Chicago and North-western Railway Company and the Chicago, St. Louis and Pittsburgh Railroad Company in that city. The Circuit Court found, that the just compensation to be paid to the City for the extension of the street across the tracks and right of way of the railroad companies was one dollar, and awarded that amount in its judgment. The street is sixty-six feet wide and the right of way of the two companies is one hundred feet wide.

Both companies were made defendants to the original petition for condemnation filed by the City, and entered their appearance. They filed a joint cross-petition, alleging that, in addition to the land to be taken for the opening of the street, they were the owners of land on each side thereof used by them as a right of way for their tracks, and which would be damaged by the taking of the strip described in the petition for a street. The petition prays, that the damage to their business, and to their lands not proposed to be taken, and all damages caused by the opening of the street, and taking of the land therefor, be assessed.

The cause was tried by agreement before the court without a jury. The appeal is taken by the Chicago and Northwestern Railway Company alone. The elements of damage set up in the cross-petition are, that the taking of the land and the opening of the street will interrupt the business of the cross-petitioners, and necessitate the construction by them of approaches to the crossings, the planking of their tracks, the draining of the side-crossings and the adjoining land owned

by them, the erection of gates at said crossing, and the keeping of a flagman there.

It was admitted, that the fee of the land described in the petition was in the railroad companies; that the Galena and Chicago Union Railroad Company was incorporated in 1836; that in 1864 that road was consolidated with the Chicago and Northwestern Railway Company under the latter name, and that "the road at the proposed crossing had then been constructed by the Galena and Chicago Union Railroad Company."

The City proved that so much of the railroad right of way, being a strip 100 feet long and 66 feet wide, as it was proposed to use for a street, had no market value for the use of a street subject to the rights of the railroad companies, and was not worth more than one dollar.

The companies proved, that the effect of opening the street would be to compel them to incur the following items of expense: for grading $50.00; planking $460.00; gate $375.00; power-house $190.00; total $1075.00; and, in order to maintain the crossing, the following items of expense: salary of gate tender, night and day, $960.00 per annum; repairs per annum to planking $76.66; repairs per annum to gate $25.00; making a total expense each year of $1061.66. The proof of the defendants also showed, that there were four or five tracks laid upon the right of way at the point where the street was to cross such right of way, and that about fifty trains passed that point daily.

The city did not propose to condemn the land of the railroad companies, nor to prevent the use of the tracks and right of way by such companies. It merely proposed to extend a street across such tracks and right of way. The value of the land where the street was to cross could not, therefore, be the measure of just compensation for property taken in the condemnation proceeding; nor could the value of the use of the property for railroad purposes be the measure of such compensation. So far as the taking of the strip was concerned,

the measure of the compensation would be the amount of decrease in the value of the use for railroad purposes which should be caused by the use for the purposes of a street, such use for the purposes of a street being subject to the use of the companies for railroad purposes. We cannot discover that there was any testimony to justify any more than a judgment for nominal damages so far as the *taking* of property is concerned. Hence the case turns altogether upon the alleged damages to the property not taken, as set up in the cross-petition.

The question is, whether, in a case where a city institutes a condemnation proceeding to open or extend a street across a railroad already constructed, the company owning such railroad is entitled to be allowed, as a part of its just compensation, the amount of its expenses in constructing and maintaining the street crossing.

Section 8 of "An Act in relation to fencing and operating railroads," approved March 31, 1874, in force July 1, 1874, (2 Starr & Cur. Ann. Stat. page 1927) is as follows: "Hereafter, at all of the railroad crossings of highways *and streets* in this State, the several railroad corporations in this State shall construct and maintain said crossings, and the approaches thereto, within their respective rights of way, so that at all times they shall be safe as to persons and property."

It does not appear in this record what the provisions of appellant's charter are, or what were the terms of the ordinance of the city of Chicago under which its predecessor laid its tracks within the limits of that city. It does not appear, that such charter did not require it to construct and maintain the crossings of all highways and streets that might be extended across its right of way in the future, or that such ordinance did not impose said requirement as to streets thereafter to be opened in the city. It does appear, however, that its charter was granted and that its road was built, at the point where it is proposed to extend West Taylor Street across its right of way,

before the act of 1874 was passed, and also before the Act of 1872 for the.incorporation of cities and villages was passed. (1 Starr & C. Stat. pages 465 and 472). But the power of the city to extend the street across the right of way is not denied; and the cross-petition admits, that such extension, when it takes place, will necessitate the construction and maintenance of the street crossing by the railroad company. The company does not refuse to construct and maintain the crossing nor deny the power of the legislature or city council to require it to do so. It proposes to construct and maintain the crossing, and, if it does so, it can make no practical difference whether it does so, because the law so requires, or for some other reason. Hence the case of *I. C. R. R. Co.* v. *City of Bloomington,* 76 Ill. 447, has no application to the present controversy. In that case, the city, by ordinance passed in pursuance of the power conferred by its charter, required the railroad company to make a proper and safe crossing by grading the approaches of the street at the crossing; the company refused to do so; thereupon the city did the grading and made the crossing, and sued the company for the amount expended for such purpose. It was held that the company was not liable, but it was expressly stated that the question, whether the right of way was so far public property that it need not be again condemned where a highway or street crosses it, was not presented by the record, and that the question was not presented whether, the city having made the improvement, the company might be required, as a police regulation, to keep it repaired.

If, under the authority of the Bloomington case, appellant is not bound to make the crossing, then why does it ask to be allowed damages in this proceeding for the probable expense of making it? The fact, that it asks compensation for such damages, is a concession of its intention to make and maintain the crossing, and the presumption is that such intention will be carried into effect because of the requirements of the

law upon that subject. The only question is, whether the appellant is bound to construct and maintain the crossing without compensation, or whether it should have been awarded damages for the expense of such construction and maintenance by the judgment of the court below.

Government owes to its citizens the duty of providing and preserving safe and convenient highways. From this duty results the right of public control over public highways. Railroads are public highways, and in their relations as such to the public are subject to legislative supervision, though the interests of their shareholders are private property. Every railroad company takes its right of way subject to the right of the public to extend the public highways and streets across such right of way. (*Railway Co.* v. *Railway Co.* 30 Ohio St. 604). In the separate opinion in *C. & A. R. R. Co.* v. *J. L. & A. Ry. Co.* 105 Ill. 388, it was said: "Unless, therefore, every railroad corporation takes its right of way subject to the right of the public to have other roads, both common highways and railways constructed across its track whenever the public exigency might be thought to demand it, the grant of the privilege to construct a railroad across or through the State would be an obstacle in the way of its future prosperity of no inconsiderable magnitude."

If railroads so far as they are public highways are, like other highways, subject to legislative supervision, then railroad companies in their relations to highways and streets which intersect their rights of way, are subject to the control of the police power of the State—that power of which this Court has said, that "it may be assumed that it is a power co-extensive with self-protection and is not inaptly termed the law of overruling necessity." (*Lake View* v. *The Rose Hill Cemetery Co.* 70 Ill. 191.)

The requirement, embodied in section 8, that railroad companies shall construct and maintain the highway and street crossings, and the approaches thereto, within their respective

rights of way, is nothing more than a police regulation. It is proper, that the portion of the street or highway which is within the limits of the railroad right of way should be constructed by the railroad company and maintained by it, because of the dangers attending the operation of its road. It should control the making and repairing of the crossing for the protection of those passing along the street and of those riding on the cars. Section 8 recites, that the railroad companies shall construct and maintain the crossings, "so that at all times they shall be safe as to persons and property." Safety of persons and property is the object of the requirement. The grading of the approaches and the planking between the rails and tracks make it possible for men and teams to cross easily and quickly, and thus avoid collision with passing trains, thereby insuring their own safety and the safety of the persons and property upon the trains. The Supreme Court of the United States have said: "Whatever differences of opinion may exist as to the extent and boundaries of the police power * * * there seems to be no doubt that it does extend to the protection of the lives, health and property of the citizens." (*Fertilizing Co.* v. *Hyde Park*, 97 U. S. 659). The testimony of the appellant in this case shows, that the planking and the gates, and the power-house which is used to operate the gates, are necessary for the safety of the public and to prevent accidents. The gates, no less than the grading and planking, are necessary to maintain the crossings and the approaches thereto, "so that at all times they shall be safe as to persons and property."

The items of expense, for which appellant claims compensation, are such only as are involved in its compliance with a police regulation of the statute. It is well settled that "neither a natural person nor a corporation can claim damages on account of being compelled to render obedience to a police regulation designed to secure the common welfare." (*C. & A. R. R. Co.* v. *J. L. & A. R. R. Co.* 105 Ill. 388.)

It has been held by this court in a number of cases, that railroad corporations may be required to fence their tracks, to put in cattle guards, to place upon their engines a bell, and to do other things for the protection of life and property, although their charters contained no such requirements. (*G. & C. U. R. R. Co.* v. *Loomis*, 13 Ill. 548; *G. & C. U. R. R. Co.* v. *Dill*, 22 id. 264; *O. & M. R. R. Co.* v. *McClelland*, 25 id. 140; *P. & P. U. Ry. Co.* v. *P. & F. Ry. Co.* 105 id. 110.)

In *O. & M. Ry. Co.* v. *McClelland, supra,* the question was presented whether the legislature could require railroad companies, whose roads were already constructed and in operation, to fence their tracks, although there was no such requirement imposed by the charter; and it was there held that it was a police regulation and within legislative power.

In *I. C. R. R. Co.* v. *Willenborg*, 117 Ill. 203, the question arose whether a railroad company could be required to construct a farm crossing over its road years after the road had been built, under the provisions of the Act of 1874 above referred to, and we there said: "The point is made, however, that these provisions are not obligatory on this corporation because they were enacted many years since it received its charter from the State. This is a misapprehension of the law. The regulations in regard to fencing railroad tracks and the construction of farm crossings for the use of adjoining land owners are police regulations in the strict sense of those terms, and apply with equal force to corporations whose tracks are already built as well as to those to be thereafter constructed. They have reference to the public security both as to persons and to property. * * * No reason is perceived why, upon the same principle on which a railroad corporation may be required to fence its track and construct cattle guards, it may not be required also to construct farm crossings." No reason is perceived why what is said in the Willenborg case as to a farm crossing does not also apply here to a street crossing,

required to be constructed by a railroad company years after the construction of its road.

The language of Section 8 is broad enough to include streets to be thereafter opened or extended, as well as existing streets. If the design of that section was to limit the obligation of the railroad company to existing crossings only, the word "construct" would not have been used. The word involves the idea of building or making for the first time, or of bringing into existence for the first time. A crossing already existing may be maintained, but it is an inaccuracy to speak of constructing that which has already been constructed. There is no reason for supposing, that the legislature intended to refer exclusively to a railroad crossing, created by running a new railroad across an existing street. The language includes also a railroad crossing, created by running a new street across an existing railroad. This view is justified by the history of the legislation upon the subject.

Section 8, as it appears in the Act of 1869, (Pub. Laws of 1869, page 312; Gross' Stat. of 1871, page 558), reads as follows: "At all the railroad crossings of the public highways of this State, *outside the corporate limits of the cities and villages,* the several railroad companies of this State shall erect, construct and maintain the same, and the approaches thereto, within their respective rights of way, so that at all times they shall be safe as to lives of persons and property." This confined the obligation to construct and maintain to crossings outside of the limits of cities and villages. Presumably the crossings inside the limits of cities and villages were to be constructed and maintained by the municipal authorities.

The city and village Act of 1872 (Rev. Stat. chap. 24, art. 5, sec. 1, paragraphs 26 and 27; 1 Starr & C. Stat. page 465) conferred upon cities and villages the power to require railroad companies "to construct * * * crossings of streets and public roads, and keep the same in repair, within the limits of the corporation." Although the power was thus con-

ferred upon cities and villages, such power might not be exer-cised by the passage of appropriate ordinances.

Then came the act of 1874 containing section 8 as it now exists. In this Act the legislature evidently intended to go further than it had ever gone before. Thereafter the railroad companies were required to construct and maintain the rail-road crossings of *streets* as well as public roads, of highways within as well as without the limits of cities and villages.; and their obligation so to do was enjoined by the mandate of a public law, and not left to the exercise of the power previously conferred upon city and village authorities. Thereafter, the cities and villages were only bound to construct the crossings and approaches thereto after failure of the railroad companies to do so upon notice given. Section 8 does not require the railroad companies to *reconstruct* the crossings already made by the municipal authorities; it was sufficient to *maintain* them; but it most clearly requires each of them to construct any railroad crossing which may thereafter be made necessary by the building of its own road, or by the opening of a new street.

It is to be noted that, by section 11 of the act of 1874, if the railroad company fails to construct and maintain the street crossings and their approaches after being notified so to do, not only shall it be liable for the expenses of the mu-nicipal authorities in that behalf, but it shall be subject to a fine. It is also to be noted, that sections 8, 9, 10 and 11, in regard to the construction and maintenance of street crossings and their approaches appear in the Act of 1874, which is an act in relation to fencing and "*operating railroads;*" and also that those sections are among provisions of the Act, requiring the fencing of railroads, the erection of farm guards, cattle-guards, gates or bars at farm crossings, warning boards at highway crossings, the ringing of bells and sounding of whis-tles, etc., all of which latter requirements have been held to be regulations enjoined by the legislature in the exercise of its

21—140 Ill.

police power.   The Act of 1869 above referred to was entitled:
"An Act to protect lives and property of persons at railway
crossings of the public highways." If the construction and
maintenance of these crossings and their approaches consti-
tute a part of the method of operating railroads, and are re-
quired for the protection of lives and property, it is difficult
to understand how the provisions in regard to them can be
regarded otherwise than as mere police regulations.

We do not agree with counsel for appellee, that section 8
necessarily operates as a repeal of paragraph 89 of section 1
of article 5 of the City and village Act.   (1 Starr & C. pge.
472.)   That paragraph is as follows:

"The city council shall have power, by condemnation or
otherwise, to extend any street, alley or highway over or across,
or to construct any sewer under or through, any railroad track,
right of way, or land of any railroad company, within the cor-
porate limits; but where no compensation is made to such
railroad company the city shall restore such railroad track,
right of way or land to its former state, or in a sufficient man-
ner not to have impaired its usefulness."

This paragraph confers the power on the city council to ex-
tend the street across the railroad right of way.   As we have
recently held in *Ill. Cen. R. Co.* v. *City of Chicago,* 138 Ill. 453,
it authorizes the city by condemnation to obtain the use of a
part of the railroad right of way "subject to the rightful use of
the railroad company thereof."   A provision, which requires
the railroad company to construct and maintain the crossing
does not conflict with a provision, which authorizes the city to
use such crossing and specifies how such use may be obtained.
Paragraph 89 implies, that there may be cases where the rail-
road company is entitled to compensation, and cases where it
is entitled to no compensation.   In the extension of streets
over other railroad lands than tracks or rights of way, and in
the construction of sewers under or through the railroad rights
of way, serious damage might be done, which would require

compensation, or restoration.   But where the approaches to the crossing are graded, and planks are laid between the rails to make an even surface for the passage of persons and teams, and gates are erected to delay such passage until trains pass, there is no part of the track, or right of way, or land, to be restored to its former state; nor is the usefulness of the railroad in any way impaired.

These items of expense are set up in the cross petition as damages to the property not taken, that is, to the right of way on either side of that portion of the right of way which is to be used as a street.   How can grading the approaches, planking the crossing and erecting gates damage the right of way adjoining the street crossing?   .The expenses which they necessitate may require a deduction from the revenues of the company, but there is no proof to show that there is any such injury or inconvenience as reduces the capacity of the corporation to transact its business.   Not the grading, or planking, or gates, but the use of the crossing by the public may result in the stoppage, or slower movement of trains, and in the increased danger. of accidents, but we have held that no damages can be allowed for these inconveniences.   (*P. & P. U. Ry. Co.* v. *P. & F. Ry. Co. supra; C. & A. R. R. Co.* v. *J. L. & A. Ry. Co. supra*).

Uncompensated obedience to a regulation enacted for the public safety under the police power of the State is not a taking or damaging without just compensation of private property, or of private property affected with a public interest.   (*R. R. Co.* v. *Co. Commissioners,* 79 Me. 386.)

There is a conflict among the decisions of the States upon this subject.   The views here expressed are contrary to those which have been held in Michigan, Kansas and Minnesota and perhaps some other States; but they accord with the decisions in Maine, New York, Ohio, and Vermont.

In *P. & R. R. R.* v. *Deering,* 78 Me. 61, a town laid out a way over the track of a railroad company, and the question

was as to the damages for the easement taken. A Statute of the State required railroad corporations to build and maintain highway crossings laid out over their tracks. It was held that, although the statute was passed after the charter of the company was granted, yet it was proper to apply its provisions to highways not in existence when the railroad was built; and an instruction, which told the jury "not to allow to the company, in the assessment of damages, any of the expense which will be incurred by them in building and maintaining so much of the new ways as are within the limits of their own location," was held to be correct.

In the later case of *R. R. Co.* v. *Co. Commissioners,* 79 Me. 386, decided in 1887, there was an appeal from an award of land damages for the location of a county way across a railroad; and it was held, that the lower court decided correctly in refusing to give the following instruction: "The appellant *is entitled to recover damages for taking its land for the pur*poses of a highway, subject, however, to its use for a railroad; for the expense of erecting and maintaining signs required by law at the crossing, for making and maintaining cattle guards at the crossing if necessary, and for the expense of flooring the crossing and keeping the planks in repair." The court there criticised the previous decision of *State* v. *Noyes,* 47 Me. 189, decided in 1859, as too narrow and strict in its interpretation; indorsed their decision in the *Deering* case; and held that the statute, which required the railroad company at its own expense to build and maintain so much of the county road as was within the limits of the railroad, was valid as an exercise of the police power of the State, and that the duty imposed thereby upon the company did not entitle it to any extra compensation for the taking of its land, and that its expense therefor was not to be considered in appraising the damages. After an elaborate discussion of the questions involved the Court says: "From the above instances of the application of the police power, the Maine statute, requiring the railroad

company to care for and maintain highway crossings within its location, seems to be a moderate and ordinary exercise of a constitutional power."

In New York it has been held, that a statute, authorizing the construction of highways across railroad tracks without compensation, does not violate the constitutional provision against taking private property for public use, or impair the obligation of contracts. (*Albany Northern R. R. Co.* v. *Brownell*, 24 N. Y. 345; *Boston & Albany R. R. Co.* v. *President, etc., of Village of Greenbush*, 5 Lansing, 461.) To the same effect are *Railway Co.* v. *Sharpe*, 38 Ohio St. 150; *Railway* v. *Railway*, 30 id. 604, and *Thorpe* v. *R. & B. R. R. Co.* 27 Vt. 140.

We cannot concur in those decisions in Michigan and Kansas, which hold that, where a highway is laid out over a railroad, the company is entitled to include in its damages the expense of cattle guards, fencing, etc.

In *T. P. & W. R. W. Co.* v. *Deacon*, 63 Ill. 91, we said: "The State has reserved to itself the power to enact all police laws necessary and proper to secure and protect the life and property of the citizen. Prominent among the rights reserved, and which must inhere in the State is the power to regulate the approaches to and the crossing of public highways, and passage through cities and villages, where life and property are constantly in imminent danger by the rapid and fearful speed of railway trains. The exercise of their franchises by corporations must yield to the public exigencies and the safety of the community."

There was no error in rendering judgment for a nominal sum, as this may be done where the evidence shows damage; but furnishes no basis for ascertaining the amount. (*P. & P. U. Ry. Co.* v. *P. & F. Ry. Co. supra.*)

The judgment of the Circuit Court is affirmed.

*Judgment affirmed.*

Subsequently, upon an application for a rehearing, the following additional opinion was filed :

Per Curiam :	Upon the application for re-hearing in this case, it is urged by counsel, that the judgment condemns the fee.	Such is not the effect of the judgment.	The judgment refers to the improvement mentioned in the petition ; the ordinance is a part of the petition ; the ordinance has a plat attached to it, and refers to the same as "the plan hereto annexed," and said plat shows that the land therein described is a part of the railroad right of way, and that the improvement contemplated is merely the extension of the street across the right of way ; the judgment does not condemn the fee, but simply secures to the city the right to open the street across the right of way in accordance with the provisions of the statute upon that subject, and to use the street when so opened.