## The Chicago and Northwestern Railway Company

*v.*

## The Town of Cicero.

*Filed at Springfield January 14, 1895.*

1. MUNICIPAL CORPORATIONS—*power to open street includes power to condemn.* The power conferred upon the board of trustees of a town to open and lay out a new street necessarily implies and includes the power to institute a condemnation proceeding to carry such power into effect.

2. SAME—*validity of ordinance for opening a street.* An ordinance of a town opening a street across a railroad track is not so unreasonable and oppressive as to authorize the courts to hold it void, simply because the existing streets across the tracks on either side of the proposed street are but 620 feet apart.

3. EMINENT DOMAIN—*sufficiency of petition for condemnation.* An allegation that an attempt or offer was made by the officers of the municipality to purchase property over which a proposed street extends, or to agree upon the price to be paid for the same, is not essential to a petition for the condemnation of the property for the purposes of a street.

4. SAME—*allowance of nominal damages for portion of right of way.* The conclusion that a jury in condemnation proceedings did not ascertain the just compensation for a street across the right of way of a railroad, for which it allowed one dollar, does not follow from the fact that for another parcel of less extent not included in the right of way, and of a marketable value, a substantial sum was awarded.

5. SAME—*special use of property proper for jury to consider.* The fact that by the opening of the proposed street across the right of way and other premises of a railroad company the property will be rendered unavailable for the purpose of a freight depot, to which it is peculiarly adapted, and that there is no other property obtainable and suitable for that purpose, may be taken into consideration in determining the amount of compensation to be awarded.

6. SAME—*jury must allow some compensation to an owner.* An instruction in a proceeding to condemn across the right of way of a railroad company for a street, that "the issue in this case is as to the compensation, *if any*, which the petitioner should pay," etc., is erroneous, as leaving the jury free to allow the railroad company no compensation at all.

7. Evidence—*experts—grounds of opinion proper to be given.*  The facts upon which the opinions of expert witnesses as to the value of property proposed to be taken in condemnation proceedings depend, may be stated by them either in chief or upon cross-examination.

Appeal from the Superior Court of Cook county; the Hon. Jonas Hutchinson, Judge, presiding.

C. S. Darrow, A. W. Pulver, and W. C. Goudy, for appellant.

Farlin Q. Ball, and E. J. Whitehead, for appellee.

Baker, J.:  This was a proceeding brought by the town of Cicero, against the Chicago and Northwestern Railway Company, to open Park avenue across the lands of the railway company, from Kinzie street to Lake street, in said town.   At that point the railway company owns a strip of ground 100 feet wide, which it uses for its right of way, for its tracks, for the running of its trains, and for other purposes in the operation of its road.   North of this strip, and adjoining it, it owns a triangular piece of ground extending from Waller avenue to Central avenue, a distance of about 700 feet, and running to a point at its east end.   It is described as lot 1, block 1, Austinville, section 8, township 39, range 13. The railway company filed a motion to dismiss the proceeding, on various specified grounds; but the motion was overruled, and an exception taken.   It also filed an answer to the petition, and a cross-petition.   Thereupon there was a jury trial, which resulted in a verdict fixing the just compensation for the eighty feet across the right of way at one dollar, and fixing the compensation for the eighty feet across lot 1 at $2252.50, and allowing nothing as damages for the property not taken.   A motion for a new trial was overruled, and judgment rendered on the verdict, and this appeal was thereupon prosecuted.

It is urged that the petition does not contain the necessary averments to give the court jurisdiction.   In the

act to revise the charter of the town of Cicero (3 Private Laws of 1869, sec. 15,) the board of trustees of the town are given power, from time to time, to open and lay out any new street, alley or highway, and to cause any street, alley or highway to be altered, widened, extended, laid out, vacated, etc. The power thus granted necessarily implies and includes the power to institute condemnation proceedings for the purpose of carrying into effect the donated power. And on October 18, 1872, the town adopted article 9 of the general act for the incorporation of cities and villages, and was thereby authorized to avail itself of the provisions of said article. Nor was it necessary that the petition should contain an allegation that an attempt or offer was made by the officers of the municipality to purchase the property in question, or to agree upon the price to be paid for the same. *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 148 Ill. 141.

A claim is made that the town of Cicero had no authority to extend its street across the property and depot grounds of the railroad company. Claims substantially the same as this were decided adversely to appellant in *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 140 Ill. 309, and other cases. The rulings there made are adhered to.

The ordinance for the extension of Park avenue across the right of way and grounds of the railroad company cannot be regarded as so unreasonable and oppressive as to authorize the courts to hold it void, simply because the streets across the railroad track on either side of Park avenue are only 620 feet apart. It is a matter of common observation that streets in towns, cities and villages are very frequently closer together than these streets will be, with Park avenue between Central avenue and Waller avenue. The location of new streets or the extension of old streets is a matter committed by the legislature of the State to the local authorities of the town. It could only be an extreme case of oppression or

outrage that would justify interference by the court. This is not such a case. And it is a very different case from the case supposed by counsel, of streets ten feet apart, all the way to Chicago.

The portion taken for the street from the triangular piece of ground, described and known as lot 1, block 1, contains 1802 square feet, and for it the jury returned a verdict for $2252.50. The portion taken for the street from the right of way, which immediately adjoined lot 1 on the south, contains 8000 square feet, and one dollar was the compensation allowed for it. From these facts the conclusion does not follow that there was not an ascertainment of the just compensation for the public easement on the 8000 square feet. The 1802 square feet formed part of a town lot, and had a market value. The 8000 square feet were a part of the railroad right of way, and were permanently devoted to a special use, and had no market value, and that special use still continued, notwithstanding the public easement with which it was burdened. By condemnation for a public highway the market value of the 1802 feet would be destroyed, while the special use in the 8000 feet would still continue after condemnation. Moreover, lot 1, block 1, was a legal subdivision of land, and was separate and distinct from the right of way of appellant 100 feet wide, and they stood upon different footings. We think the land within the right of way was properly separated, in the petition, from the land in lot 1, and that it was not error for the trial court to take the verdict of the jury upon them severally.

The court, over the objections of appellant, allowed the following question to be asked the several witnesses introduced by the petitioner, and they each answered, "Merely nominal—one dollar."

Q. "Now, in regard to the piece of property taken from the right of way, respecting the date of the filing of the petition to which I have called your attention, I will

ask you this question: What is the value of so much, if any, of the use of the strip of ground which has been described, for the purposes of a railroad company, as is taken for the purpose of a public street? In that view you should take into consideration the fact—that is, in estimating your value—that the railway company will maintain its use of this strip of ground; that its use is unaffected by the laying down of the street, except so far as the railroad company may be put to expense in performing its public duty and in obedience to police requirements. Considering these facts, what is the value of so much, if any, of the use of this strip for the purposes of the railroad company as is taken for the purpose of a public street in this proceeding?"

The question was objected to "on the ground that it does not represent the true basis of value; that it is incomprehensible and misleading, and that it is incompetent, immaterial and irrelevant." We find some difficulty in fully apprehending the meaning of the question. We fear that some of the witnesses to whom the question was propounded, and some of the jurors who merely heard the question asked, may have experienced a like difficulty. We do not think that it can properly be said, as a matter of law, that the use of the strip of ground taken for the public street "will be unaffected by the laying down of the street, except so far as the railroad company may be put to expense in performing its public duty, and in obedience to police requirements." It appears from the record that there is a village there of about 7000 inhabitants; that the passenger depot and platform are located north of the railway tracks and a short distance east of the proposed street extension; that at present there is no freight depot in the village; that the only switch and side-tracks are on the right of way at the place proposed to be taken for the street, and that for many years the land at that place has been used, and is now daily used, for loading and unloading

the freight shipped from and to the village.    It is claimed
by appellant that owing to the location of the public
park, and the location of Lake street and Kinzie street
on either side of the right of way, there is no other prop-
erty obtainable that is suitable for a freight depot, and
that the ground to the north of the railroad tracks,
taken in connection with lot 1, block 1, and which lot is
from twenty to twenty-three feet wide at that place, is
peculiarly adapted for the construction thereon of a
freight depot.    It seems to us that these matters were
proper for the consideration of the jury, and that there-
fore, in view of their existence, or claimed existence, it
cannot be that it is necessarily true, as a matter of law,
that "the use of the strip of ground taken for the street
will be unaffected by the laying down of the street."
Nor do we understand that there is anything in the
public duty of the company, or in the obedience that it
owes to police requirements, that would preclude it from
recovering compensation for the value of the use of the
ground as a place for loading and unloading freights or
as a site for a freight depot.    There is a very marked
difference between what is claimed as the status of this
property and that of a part of the continuous right of
way of the railroad company or of the railroad yards,
both being used only for the laying of railroad tracks
thereon and the passage of cars over the same.    The use
of the property condemned, as a public street or high-
way, will necessarily exclude any use of it as a location
for a freight depot or as a place whereon to load and un-
load freights.    The two uses are wholly inconsistent with
each other.    *Illinois Central Railroad Co.* v. *City of Chicago*,
141 Ill. 509; *Same* v. *Same*, id. 586.    We think it was error
to overrule the objections to the question.

The contention that the court excluded competent
testimony that was offered by appellant, must be sus-
tained.    Various of the witnesses for appellant testified
to the value of the property proposed to be taken in this

proceeding, and they were then asked to state the facts upon which they based their opinions of value, but the court refused to permit them so to do. This was error. The weight and value of the testimony of expert witnesses largely depend upon the foundations of fact and of reason upon which their opinions stand. The proffered evidence was competent, and it was competent evidence in chief. The opinions are admissible along with the facts upon which they are based. *Illinois and Wisconsin Railroad Co.* v. *Von Horn,* 18 Ill. 257; *Butler* v. *Mehrling,* 15 id. 488.

The first instruction given for the petitioner was as follows :

"The jury are instructed that the issue in this case is as to the compensation, if any, which the petitioner should pay for the extension of Park avenue across that part of the right of way of the respondent railway company described as follows : (Here follows the description.) And in determining this question as to the property first above described, and called 'right of way,' you must take into consideration the fact that the use by the public of said strip of land will be subject and subordinate to the use of said strip by the railroad company for its tracks and the running of its trains."

It is the mandate both of the constitution and of the statute that appellant should be paid just compensation for its property taken,—not compensation, *if any*, for its property taken. Property is the right and interest which one has in lands and chattels to the exclusion of others. The term "property" includes every species of valuable right and interest. Value is the price deemed or accepted as equivalent to the utility of anything, and compensation is that which constitutes or is regarded as an equivalent. It is impossible to conceive of such a thing as property wholly separated from the element of value. From the very term "property," the law infers some value; and if no value is shown, the inference will be

that it is the nominal sum of one cent, one penny or one dollar. The petitioner, by coming into court and describing the premises as "property sought to be taken," and asking that "just compensation be made therefor, necessarily admitted that there was some valuable interest in that which was to be condemned. Just compensation to the extent of that value was an absolute and constitutional condition precedent to the exercise of the right to take the property from the owner under the right of eminent domain. In this case the jury should have been told by the court that they should ascertain the just compensation for the property taken by the proceeding. Instead of this, they were told to fix the compensation, if any, for this property. The instruction was a direction to the jury that they might take the property of the railway company for public use without making any compensation whatever therefor. It left them perfectly free to do that. They, however, compromised the matter, and allowed the nominal compensation of one dollar.

The objection we have noted is apparently somewhat technical. It may be that, of itself, it should not be held good ground for reversing an otherwise unobjectionable judgment. It is based, however, on fundamental principles, and in respect to its practical effect it was well calculated to prejudice and belittle the rights of the property owner, and mislead the jury to its detriment.

The objections urged to the latter part of the instruction are not considered as well grounded.

For the errors indicated herein the judgment is reversed. The cause is remanded to the Superior Court of Cook county, with directions to award a *venire facias de novo.*

*Reversed and remanded.*