166    87
70a 215
160    87
169  170
169  177
166    87
174  554
75a 578
75a 590

CHICAGO, BURLINGTON AND QUINCY RAILROAD CO. *et al.*

*v.*

THE CITY OF NAPERVILLE.

*Filed at Ottawa April 3, 1897.*

1. APPEALS AND ERRORS—*when verdict in condemnation will not be disturbed on appeal.* The verdict of a jury awarding damages in condemnation will not be disturbed, on appeal, upon the sole ground that it is contrary to the evidence, where the evidence as to the damage is conflicting, and the jury viewed the premises.

2. EMINENT DOMAIN—*damages—measure of damages where railroad property is condemned for street.* Where the use of a strip of land across a railroad company's right of way and depot grounds is condemned for a public street, the measure of damages for the property taken is the decrease in value of its use for railroad purposes, caused by its being used as a street.

3. SAME—*cross-petition for damages to railroad property not taken— what allowable.* Where a strip of land across a railroad company's depot grounds and right of way is condemned for a street, and the company files a cross-petition for damages to property not taken, the jury, in estimating such damages, may consider the increase in cost of transacting the company's business and loss from interruption of the same, occasioned by the street. (*Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago,* 148 Ill. 519, distinguished.)

4. INSTRUCTIONS—*an instruction using words "if any," in referring to damage to land taken, is erroneous.* An instruction as to the measure of damages in condemnation which uses the words "*if any,*" in referring to the damage to property actually taken, is erroneous, as both the constitution and the statute require just compensation to be paid for property taken, and not just compensation "*if any.*"

5. SAME—*erroneous instruction of one party is not cured by correct instruction of opponent.* Error in instructions given for petitioner in condemnation, relating to the rule for allowing damages, is not cured because one given for defendant announced the proper rule.

APPEAL from the Circuit Court of DuPage county; the Hon. C. W. UPTON, Judge, presiding.

A. J. HOPKINS, F. H. THATCHER, and F. A. DOLPH, (O. F. PRICE, and C. M. DAWES, of counsel,) for appellant the Chicago, Burlington and Quincy Railroad Company.

H. H. GOODRICH, for appellant B. B. Boecker.

ELBERT H. GARY, and JOHN H. BATTEN, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a proceeding in the circuit court of DuPage county, instituted by the city of Naperville, against the Chicago, Burlington and Quincy Railroad Company and others, to condemn certain premises for a street across the depot grounds of the railroad company. The object of the proceeding was to lay out and extend Center street sixty-six feet wide, from the north line of the depot grounds south some three hundred and seventeen feet to the south line of the depot grounds, as shown by a plat in the record.

Upon looking into the record it appears that the railroad company has two main tracks running through Naperville. The main portion of its depot grounds at that place is between Washington and Front streets. These streets cross the railroad tracks at right angles. The distance between them is about five hundred and fifty feet. There are two side-tracks north of the main tracks, practically parallel with the main tracks. The depot building is between the main tracks and the side-tracks, and the west end of the building is not far from the center point between Washington street and Front street. Along the side-tracks are two grain elevators, buildings for the storage of coal, warehouses and other buildings, constructed there for the purpose of receiving and discharging freight. On the south side of the main tracks opposite the depot building is a passenger shed and plat-

form.  A passenger walk extends from this passenger shed easterly to Front street and westerly to a point about one hundred feet west of the depot building.  On the north side of the main tracks is the depot building proper, a building one hundred feet in length by thirty feet in width, with a platform and walk around it of from eight to ten feet in width.  A passenger walk extends from the depot building and platform westerly about one hundred and twenty-five feet, and at the west end of this walk is a structure designated on the map as the milk station.  North of the north side-track, and on a line a little west of the depot building, is a building used for the storage of coal, sixty feet in length by fifty feet in width.  The proposed street across the main tracks and side-tracks of the railroad company comes within about thirty feet of the depot building and within about twenty feet of the depot platform.

The railroad company filed a cross-petition, in which it claimed damages to property not taken but damaged by the laying out and opening of the street in question. It is set up in the cross-petition that the depot grounds comprise some seven and one-half acres; that the street will pass through the grounds and cut off that portion west of the proposed street from the depot building; that the lands taken and the lands lying west of the proposed street have been, and are now being, used for unloading and loading merchandise and for the receipt and discharge of freight; that there is no freight depot at Naperville, and that the lands taken and those west of the depot are peculiarly adapted to the erection thereon of a depot, warehouses and other structures for railroad purposes, but that if the street is laid out the company cannot utilize that portion of the depot grounds west of the proposed street.  The cross-petition contained other allegations, but it will not be necessary to set them out here.

The issues presented by the petition and cross-petition were submitted to a jury, and the jury returned a

verdict in favor of the railroad company of $150 for property taken and one dollar for damages to property not taken. The court overruled a motion for a new trial and rendered judgment on the verdict.

It is first claimed in the argument that the verdict of the jury is contrary to the evidence. As is usual in cases of this character, the evidence introduced by the respective parties is very conflicting. The petitioner introduced some five witnesses who reside at Naperville, and they united in testifying that the cash value of the property to be taken for the street, subject to the right of the railroad company to use it for railroad purposes, was merely nominal; that the land, unaffected by railroad tracks, was worth not exceeding $500. On the other hand, the railroad company called three or four witnesses who testified that in their opinion the damages to the seven and one-half acres owned by the railroad company by the extension of the street were from $3000 to $3600, and that the value of the land taken was from $700 to $800. Upon an examination of the evidence it appears that no street or highway has ever been laid out to the railroad station, but all the land south of the depot platform proposed to be taken has been open and used by the public for about twenty-five years, and on the north of the switch tracks, after passing the coal sheds of Boecker, the land proposed to be taken has also remained open and has been used by the public. The jury viewed the premises and saw the location of the main and side-tracks, the depot, its location and surroundings. What the jury learned upon an examination of the premises they had the right to consider, in connection with the other evidence, in arriving at the amount of damages to be allowed, and the rule is well settled that the damages awarded by a jury in a condemnation proceeding will not be disturbed where the evidence is conflicting and the jury viewed the premises. *Pittsburgh, Ft. Wayne and Chicago Railway Co.* v. *Lyons,* 159 Ill. 576.

It is, however, said, that there is no evidence in the record on the question of damages to the property not taken except what was introduced by the defendant. This, we think, is a misapprehension of the record. Two of the witnesses for the petitioner, on their cross-examination, testified to the benefits to result to the railroad company from the opening of the street. John W. Collins, an old resident of Naperville, testified: "I have been personally familiar with the Chicago, Burlington and Quincy depot and the surroundings since my earliest recollection, and also with Center street. The property just south of the tracks and north of Boecker's building has been used as a street. I have been in the city council; it was six or seven years ago. I think the city maintained the sidewalk from the north end of South Center street to the tracks. The crossing has been there thirty years or more. That property has been open during that time. I am somewhat familiar with Park addition, and think I know the value of real estate in that vicinity." In connection with this, there was the evidence of John M. Vallette, the surveyor, showing the location of the streets, railroad tracks, depot, and the manner in which the property had been used. In addition to this evidence there was the view of the jury. The view and the evidence alluded to were all proper for the consideration of the jury, in connection with the evidence offered by the defendant.

On the trial of the cause the court, over the objection of the defendant, allowed the following question to be asked the witness Wallace: "How much, in your opinion, was the full cash value of this piece of property marked in green, for the use of the street, subject to all the rights of the railroad company, the respondent?" Of the witness Betts the following question was asked: "What is the value of the land for street purposes, subject to the right of the railroad to use it for railroad purposes?" Of the witness Ballou the following question: "How much, in

your opinion, is the cash market value, if there is any, of the right of the city to use that property for a street, subject to the rights of the railroad company?" To all of these questions the witnesses answered that the value was merely nominal. It is manifest that these questions were improper and the admission of the evidence was erroneous. Where a strip of land occupied by a railroad company as right of way or depot grounds is taken for a public street, it has been held in a number of cases that the measure of compensation is the amount of decrease in the value of the use for railroad purposes which would be caused by the use for the purposes of the street. (*Illinois Central Railroad Co.* v. *Comrs. of Highways*, 161 Ill. 247.) As a general rule where land is taken, if it has a market value that must be given. If it has no market value, then the question is what it is worth to the owner as it is used by him. Here the property was not entirely taken, but it was to be used as a street, and the proper inquiry was what was the decrease in value of the property as taken, to the railroad company. The admitted evidence had no bearing on that question, but, on the other hand, it could only establish an erroneous basis for estimating the true amount of damages the jury were required to award.

At the request of petitioner the court gave the following instruction, which is claimed to be erroneous:

"The railroad company is not entitled to recover as compensation the expenses of constructing and maintaining the crossing and its approaches, or because the street may increase the cost of transacting the company's business at that point, or because the business of the company may be interrupted at and in consequence of the use of the street, or because the company may be obligated to adopt and observe measures for the preservation of the public safety, or because the company will be subject to any other police regulations or powers."

Where land is taken for a public use the constitution and the statute require that just compensation shall be

made to the owner.   Unless the owner is made whole he would not receive the compensation which the constitution guarantees to him.   Here the proposed street is laid across the depot grounds of the railroad company, crossing the main track and side-tracks within a few feet of the passenger depot building.   Now, if the opening of the street will increase the cost of transacting the company's business, or if the business of the company will be interrupted and by the interruption damages will be sustained, the railroad company will not receive just compensation unless it is paid all damages arising from the interruption of its business or from the increased cost of transacting the same.   This would seem too plain a proposition to consume time in its elaboration.   Indeed, a similar question arose in *Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago*, 151 Ill. 359, and it was there held that where a city seeks to condemn a strip of land across the right of way and tracks of a railway company leading to its yards, used for storing, switching and making up trains, and the company files a cross-petition for damages to the land not taken for the street, and the evidence shows that in the use of such yards the operation of the company's switch engines will be retarded and hindered, and that it will require an increased expenditure of money daily to perform the same operations in handling and switching cars, making up trains, etc., now carried on, after the opening of the street, it is clearly competent for the company to call witnesses and have them approximate the average daily increased expenditure that will be caused to it, as tending to show damages to property not taken.   See, also, *Chicago and Northwestern Railway Co.* v. *Town of Cicero*, 154 Ill. 656.

What was said in *Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago*, 148 Ill. 509, has no bearing on this case, as in that case no cross-petition was filed claiming damages to property not taken, and there the street did not cross depot grounds, but merely the track

and right of way of the railroad company, where nothing but nominal damages could be recovered.

The instruction, so far as it relates to the obligation of the company to adopt and observe measures for the preservation of the public safety, or because the company may be subject to police regulations, may be regarded as correct, but that portion relating to the increase of the cost of transacting the company's business or in relation to the interruption of the same was erroneous and calculated to mislead the jury. It is true that instructions 4 and 5 given on behalf of the railroad company, announce a different rule from that declared in the instruction complained of, and if the jury had followed the instructions of the defendant and disregarded the instruction of petitioner the difficulty might be obviated. But it cannot be known what instructions the jury followed, and hence the instructions given on behalf of the respective parties should be made to harmonize by the court before they are given to the jury.

It is next claimed that the court erred in giving petitioner's eighth instruction, which was as follows:

"The jury are instructed that the city does not propose to condemn the fee of the land of the railroad company, nor to prevent the use of the tracks and right of way for crossing purposes by it. The value of the land where the street will cross it is not the measure of compensation for property taken. The value of the use for railroad purposes is not the measure of such compensation. So far as the taking of the strip of land is concerned, the measure of compensation is the amount of decrease, if any, in the value of the use for railroad purpose which will be caused by the use for the purposes of a street, such uses for the purpose of a street being subject to the use of the railroad company for its tracks and right of way for crossing purposes."

An instruction of this character was condemned by this court in *Illinois Central Railroad Co. v. Comrs. of High-*

*ways*, 161 Ill. 247.   It is there said (p. 251): "The use of a railroad right of way is exclusive, and is property within the mandate and protection of this constitutional provision, and an entry upon such right of way and use of it for another public purpose is a taking of property for which there must be just compensation.   (*Lake Shore and Michigan Southern Railway Co.* v. *Chicago and Western Indiana Railroad Co.* 100 Ill. 21.)   The extension of a public highway by the public authorities across the right of way of a railroad company deprives it, in part, of its property rights in respect to the portions of the right of way within the lines of such highway, so as to entitle the railroad company to just compensation.   (*Illinois Central Railroad Co.* v. *City of Chicago*, 156 Ill. 98.)   And in *Chicago and Northwestern Railway Co.* v. *Town of Cicero*, 154 Ill. 656, we said (p. 662):   'It is the mandate both of the constitution and of the statute that appellant should be paid just compensation for its property taken,—not compensation, *if any*, for its property taken.   Property is the right and interest which one has in lands and chattels, to the exclusion of others.'"   Here the defendant was entitled to recover the cash market value of what was taken and whatever damage it sustained to the property not taken, and it was unfair to throw out an intimation in the instruction that there was no damage, by directing the jury that the measure of compensation is the amount of decrease, *if any*.   Instruction number 9 is subject to the same objection.

The ruling of the court on other instructions has been criticised, but we perceive no substantial objection to it. Some of the refused instructions contained correct propositions of law, but they were substantially given in others.

For the errors indicated the judgment will be reversed and the cause remanded.               *Reversed and remanded.*