THE VILLAGE OF ARLINGTON HEIGHTS, Plaintiff-Appellee, *v.* ILLINOIS COMMERCE COMMISSION *et al.*, Defendants-Appellants.

First District (5th Division)    No. 77-1105

Opinion filed June 2, 1978.—Modified on denial of rehearing September 22, 1978.

Louis T. Duerinck and Stuart F. Gassner, both of Chicago, for appellants.

Jack M. Siegel, of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant Chicago and North Western Transportation Company (C&NW) appeals from a judgment which found that the Illinois Commerce Commission (ICC) order that a grade crossing be installed across a portion of C&NW's railroad tracks was a proper exercise of the police power and did not entitle the railroad to any compensation. On appeal, C&NW contends that although the authorization of a new street crossing was a valid exercise of the police power, it is entitled under the Eminent Domain Act (Ill. Rev. Stat. 1977, ch. 47, par. 1 *et seq.*) to compensation for its property which is damaged or taken, and the decision of the circuit court is therefore erroneous.

The following facts are pertinent to the disposition of this appeal.

On January 28, 1970, the Illinois Commerce Commission (ICC) authorized the installation of a grade crossing across the C&NW tracks at a proposed extension of Walnut Street in Arlington Heights, Illinois. Although the authorization provided for the apportionment of installation and maintenance costs, there was no evidence heard, nor decision made, regarding the value of any interest in land utilized for the crossing. C&NW subsequently sent a letter to L. A. Hanson, village manager of Arlington Heights, demanding that it be paid $16,465 as compensation for an easement and/or for damages to its property created by the proposed crossing. On November 6, 1974, the Village of Arlington Heights filed a motion with the ICC which asked that C&NW be required to comply with the order of January 28, 1970, by completing the installation of the grade crossing without requiring compensation for an easement to be paid by the Village of Arlington Heights. The ICC issued a supplemental amending order on March 26, 1975, in which it denied the village's motion and specifically determined that it would make no finding as to C&NW's request for compensation for the taking or damaging of its property

caused by the construction of the Walnut Street crossing across its right-of-way. The Village of Arlington Heights appealed this decision to the circuit court of Cook County, which, following a hearing, entered a final judgment order in favor of the village. The court found that the ICC's order of the installation of the grade crossing was a proper exercise of the police power, and that C&NW was not entitled to compensation for any interests in its land utilized for that crossing. On May 31, 1977, C&NW filed its notice of appeal.

Opinion

On appeal C&NW contends that the circuit court's decision was erroneous. Plaintiff, in support of that decision, cites as controlling section 8 of the Fencing and Operating Railroads Act (Ill. Rev. Stat. 1977, ch. 114, par. 62), and section 58 of the Public Utilities Act (Ill. Rev. Stat. 1977, ch. 111 2/3, par. 62). These statutes provide, respectively, that "the several railroad corporations in this state shall construct and maintain said [highway and street] crossings, and the approaches thereto, within their respective rights of way, so that at all times they shall be safe as to persons and property," and that the ICC shall have the power "to determine and prescribe the manner, including the particular point of crossing, and, the terms of installation, operation, maintenance, use and protection of each such grade crossing." Plaintiff also points out that the Public Utilities Act gives the ICC the power to apportion the costs incurred in the construction or improvement of any crossing. (See *Illinois Central R.R. Co. v. Franklin County* (1944), 387 Ill. 301, 56 N.E.2d 775.) C&NW concedes that the ICC has the authority described in the statute, that its order in this case was a valid exercise of that authority, and that in complying with that order there is no requirement that it be compensated for any of the costs incurred in constructing, maintaining or operating the proposed crossing. C&NW argues, however, that the statutes cited by plaintiff cannot defeat article 1, section 15 of the Illinois Constitution, which provides that "[p]rivate property shall not be taken or damaged for public use without just compensation as provided by law." C&NW concludes that because the original construction of a grade crossing over its land "takes" the land from its exclusive dominion and control, the circuit court's decision that it was not entitled to any compensation is an improper deprivation of its property. It therefore prays that the judgment of the circuit court be reversed so that an agreement regarding compensation may be reached, or the provisions of the Eminent Domain Act (Ill. Rev. Stat. 1977, ch. 47, par. 1 *et seq.*) may be followed and the proper compensation may be paid.

In the Eminent Domain Act the legislature has set forth the procedures

which are to be followed in order to compensate the owner of the property which is taken or damaged for public use. Section 2 of the Act provides that:

"* * * the party authorized * * * to construct, operate and maintain any public road, railroad, * * * or other public work or improvement, may apply to the circuit court of the county where the property or any part thereof is situated, * * * praying such court to cause the compensation to be paid to the owner to be assessed. * * * No property belonging to a railroad or other public utility subject to the jurisdiction of the Illinois Commerce Commission may be taken or damaged, pursuant to the provisions of this Act, without the prior approval of the Illinois Commerce Commission." (Ill. Rev. Stat. 1977, ch. 47, par. 2.)

The ICC considered C&NW's request that compensation be paid, and stated that:

"The question of taking or damaging North Western's property by extending a public street over its right-of-way, appears to be resolved in the case of *Green Bay and W. R. Co. v. Public Service Commission*, 269 Wis. 178, 188, 189, 68 NW 2d 828 (1955). In that case * * * [t]he Wisconsin Supreme court stated that a state under its police power can require a railroad to expend whatever is necessary to make a crossing safe, but the railroad is entitled to damages for the diminution in the value of its right-of-way. Accordingly, this Commission will make no finding as to the North Western's request for an easement payment for the taking or damaging of its property right-of-way at the Walnut Street crossing; that question may be determined by appropriate litigation in a court of law." (I.C.C. Supplemental Amending Order, March 26, 1975.)

In support of its argument that no taking of property requiring compensation or eminent domain proceedings occurred here, plaintiff relies on and extensively quotes from *Chicago & Northwestern Ry. Co. v. City of Chicago* (1892), 140 Ill. 309, 29 N.E. 1109, in which the city sought to extend a street across the railroad's tracks and right-of-way. Emphasizing that railroads serve as public highways, our supreme court concluded that:

"Uncompensated obedience to a regulation enacted for the public safety under the police power of the State is not a taking or damaging without just compensation of private property, or of private property affected with a public interest." (140 Ill. 309, 323, 29 N.E. 1109, 1113.)

Plaintiff argues that because the ICC's order that the Walnut Street crossing be constructed over C&NW's property is a proper exercise of the police power for the public welfare there is no taking of property which

would require eminent domain proceedings to be held or compensation to be paid.

■■ We disagree with this argument. Plaintiff has cited several cases which support the proposition that the ICC has the regulatory police power over grade crossings and, under that power, can apportion the costs of their construction, abolition and maintenance. (See, *e.g., Chicago Burlington & Quincy R.R. Co. v. Illinois Commerce Com.* (1951), 410 Ill. 60, 101 N.E.2d 92; *Chicago, Milwaukee & St. Paul Ry. Co. v. County of Lake* (1919), 287 Ill. 337, 122 N.E. 526.) We note, however, that C&NW does not in any way dispute that proposition, and it is not dispositive of the issue before us in this case. On review of an order by the ICC, it is proper to determine whether constitutional rights have been infringed. (*City of Chicago v. Illinois Commerce Com.* (1934), 356 Ill. 501, 190 N.E. 896.) The constitutional right involved in this case, as indicated above, is the right of the property owner to be justly compensated for any property which is taken or damaged for public use. (Ill. Const. 1970, art. I, §15.) The police power under which the ICC's order was issued is not unlimited and cannot be invoked to sanction the taking of private property for public use without just compensation, even where such taking is essential for the public health or welfare. (*Sanitary District v. Commonwealth Edison Co.* (1934), 357 Ill. 255, 192 N.E. 248.) As our supreme court stated in *East Side Levee & Sanitary District v. Mobile & Ohio R.R. Co.* (1917), 279 Ill. 319, 323, 116 N.E. 727, 729:

"* * * although a railroad company may be required to elevate its track, if private property is damaged, the fact that the elevation is required under the police power makes no difference in the right to compensation. * * * It is a physical interference with the property and a taking under the power of eminent domain."

Further, examination of *Chicago & Northwestern Ry. Co.* reveals that plaintiff's reliance upon it is misplaced. The Illinois Supreme Court there discussed the character of a railroad as a public highway only in determining whether, after the city instituted a condemnation proceeding to extend a street across the railroad's right-of-way, the railroad was entitled to compensation for its expenses in constructing and maintaining the street crossing. Although our supreme court concluded that the railroad should be denied compensation for these costs, it also affirmed the circuit court's award of $1 as compensation to the railroad company for the property taken by the city for the street extension. The supreme court found that the appropriate measure of compensation was the amount of the decrease in value of the land, as it was used for railroad purposes, as a result of the street extension, and that no testimony justifying a higher amount had been heard. 140 Ill. 309, 314-15, 29 N.E. 1109, 1110.

Subsequently, our supreme court repeated the ruling that a railroad company is entitled to compensation when its right-of-way is used for a public purpose, and that such compensation shall be measured by the decrease in the value of the land for railroad purposes that is caused by the proposed public use. (See, *e.g.*, *Chicago, Burlington & Quincy R.R. Co. v. City of Naperville* (1897), 166 Ill. 87, 47 N.E. 734; *Illinois Central R.R. Co. v. Commissioners of Highways* (1896), 161 Ill. 247, 43 N.E. 1100.) This measure of compensation was also prescribed in *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago* (1897), 166 U.S. 226, 41 L. Ed. 979, 17 S. Ct. 581, in which the United States Supreme Court held that even if there is an authorized taking of property for public use, the fourteenth amendment to the United States Constitution requires that compensation be made to the property owner. Recognizing the distinction between the taking of property and the imposition of costs of construction on the property for the public use, the court explained that:

"While the city was bound to make compensation for that which was actually taken, it cannot be required to compensate the defendant for obeying lawful regulations enacted for the safety of the lives and property of the people. And the value to the railroad company of that which was taken from it is, as we have said, the difference between the value of the right to the exclusive use of the land in question for the purposes for which it was being used, * * * and that value after the city acquired the privilege of participating in such use by the opening of a street across it * * *." 166 U.S. 226, 256, 41 L. Ed. 979, 991, 17 S. Ct. 581, 592.

In the instant case the circuit court's finding that C&NW was not entitled to any compensation prevented the institution of eminent domain proceedings, at which evidence regarding the decrease in value of the land to C&NW as a result of the proposed construction of the Walnut Street crossing could have been adduced. Based on the foregoing, we conclude that the judgment of the circuit court was erroneous. In extending one of its streets, the Village of Arlington Heights does not deprive C&NW of the use of its right-of-way, but rather imposes a burden on the property which is in the nature of an easement. Although the decrease in the value of the land as it is used by the railroad company may therefore be nominal, C&NW is correct that, absent an agreement, a hearing on this point in accordance with the provisions of the Eminent Domain Act should be held.

Based on the foregoing, the judgment of the circuit court is reversed and remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.