The Lake Shore and Michigan Southern Railway Company

*v.*

The City of Chicago.

*Filed at Ottawa October 26, 1893.*

1. Eminent Domain—*petition—allegation of inability to agree as to compensation.* An allegation of inability to agree upon the compensation, or that the owner of the property sought to be taken is incapable of consenting, or that his name or residence is unknown, or that he is a non-resident, is necessary, or even jurisdictional, in case of petition filed under the provisions of the Eminent Domain law. But where the petition is filed, under article 9 of the City and Village act, to condemn land for a street, no such allegation is required.

2. Same—*condemnation by cities—statute applicable.* The statute in relation to eminent domain provides a general mode of condemnation, applicable to all cases for the exercise of the right to take or damage private property for public uses by any corporate or municipal authority, public body, officer, agent, person, commission or corporation. In all condemnation proceedings instituted under that statute its provisions must be held to apply.

3. But the legislature, in the exercise of its undoubted power, has seen fit, by article 9 of the City and Village act, to provide for an independent and somewhat different mode of proceeding in cases of the taking or damaging of private property by cities and villages for local improvements. And the intention to provide such different mode of

procedure by cities and villages would be defeated, if, by construction, the two statutes should be practically amalgamated, so as to make all the provisions of the one apply to and become a part of the other.

4.  Unquestionably many of the rules prescribed in the Eminent Domain act must be held to apply to condemnation under article 9 of the City and Village act. But the provisions of section 2 of the former act have no application to a proceeding under the latter act.

5.  SAME—*elements of compensation or damages.* In a proceeding by a city to condemn the right of way of a railway company for the extension of a street intersecting another street in which the company has its right of way, evidence of the expense the company will be put to in the construction of the crossing and its approaches, and of the cost of erecting gates, and the house and machinery for operating them, and also the expense of a gate-keeper, and of keeping gates, machinery and crossing in repair, is properly excluded. All such expenditures are matters for which the company is not entitled to any compensation.

6.  Where a street is extended across a railway track or right of way, the company is required to make suitable crossings and approaches, as a matter of police regulation, at its own expense; and the cost and expense of making safeguards against accidents and injury to persons passing over street crossings are not elements of damage or compensation.

7.  Burdens imposed upon a railway company by the extension of a street across its right of way, which the law imposes upon it as a proper police regulation, do not constitute elements of damages in a proceeding to condemn a crossing. By such extension of a street across the right of way the railway company assumes new relations to the public, and becomes obligated to adopt and observe new measures for preserving the public safety.

8.  MUNICIPAL CORPORATIONS—*power to purchase land for local improvement.* It is doubtful whether a municipal corporation has the power, by private agreement with a property owner, to fix the amount of compensation to be paid, especially when the compensation thus ascertained is to be raised by special assessments upon contiguous property or the property deemed to be benefited.

9.  STATUTES—*in pari materia construed together.* Statutes *in pari materia* are to be construed together, as though forming one body of law; and when there are seeming inconsistencies between the two statutes, they should be so construed, if possible, as to give to each its appropriate effect.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

Messrs. Pliny B. Smith, and Messrs. Gardner & McFadon, for the appellant:

The provisions of the Eminent Domain act, and those of article 9 of the City and Village act, being *in pari materia*, should be construed together as one act.    *Baker* v. *Railroad Co.* 93 Ill. 342.

A petition not containing an averment of an inability to agree is insufficient, from a jurisdictional standpoint.    *Reed* v. *Railway Co.* 126 Ill. 48; *Chaplin* v. *Highway Comrs.* 129 id. 651; *People* v. *Supervisors*, 125 id. 334; *Railway Co.* v. *Galt*, 133 id. 667; *Smith* v. *Railroad Co.* 105 id. 518; Lewis on Eminent Domain, sec. 357.

The rule of damages under article 9 of the City and Village act is the same as under the Eminent Domain act.    *Harwood* v. *Bloomington*, 124 Ill. 50.

As to the elements and measure of compensation and damages, see *Railroad Co.* v. *Kirby*, 104 Ill. 345; *Johnson* v. *Railway Co.* 111 id. 419; *Railway Co.* v. *Railroad Co.* 112 id. 589; *Railway Co.* v. *Railroad Co.* 100 id. 33; *Railroad Co.* v. *Van-Horn*, 18 id. 257.

A railroad company whose right of way is about to be condemned, is entitled to recover as damages "all damages directly resulting from the making or using of the crossing sought to be made, whereby the value of its property is diminished or its facilities are materially impaired for the transaction of its business.    If the inconvenience or hindrance resulting from such crossings or other structures abridges the owner's capacity to transact an equal volume of business, it is an element of damages, even though it does not increase his expenses."    *Railroad Co.* v. *Railway Co.* 115 Ill. 375; *Railway Co.* v. *Railroad Co.* 100 id. 21; *Railway Co.* v. *Railway Co.* 105 id. 110; *Railroad Co.* v. *Railroad Co.* 67 id. 147.

Mr. Charles C. Gilbert, and Mr. John S. Miller, for the appellee:

Under the Eminent Domain act a private corporation proceeding, in the event that the compensation to be paid for or in respect of the property sought to be taken or damaged can not be agreed upon, the compensation is paid directly by the party in interest, without any tax or the levy of a special assessment. *Chaplin* v. *Highway Comrs.* 129 Ill. 651.

The detention of trains and the loss of future business, and the expenses incident to the future exercise of corporate powers caused by the construction of a crossing, are purely speculative, and can not be taken into account. 14 Am. and Eng. Ry. Cases, 62; *Railroad Co.* v. *Railroad Co.* 105 Ill. 110; *Railroad Co.* v. *Railroad Co.* 30 Ohio, 604; *Railroad Co.* v. *Dearnig*, 78 Me. 61; *Railroad Co.* v. *Railroad Co.* 121 Mass. 124.

Mr. Justice Bailey delivered the opinion of the Court:

This was a proceeding by the city of Chicago, for the extension and opening of Chauncey avenue across the rights of way of the Lake Shore and Michigan Southern Railway Company and the Pittsburg, Ft. Wayne and Chicago Railway Company. Chauncey avenue is a street 66 feet in width, running north and south, and when extended, will cross the right of way of the Lake Shore and Michigan Southern Railway Company at the point where it is already crossed by Seventy-sixth street, a street 80 feet in width, and running east and west. The right of way of the last named railway company, the only one involved in this appeal, is 100 feet in width, and runs from the north-west to the south-east, at an angle of about 45 degrees from the line of Chauncey avenue extended. The portion of the right of way of that company which will be occupied by the avenue will consist, in addition to the land included in the intersection of the avenue with Seventy-sixth street, of two

small triangular pieces of ground, one on the east side of Seventy-sixth street, the two sides of the triangle adjacent to the right angle being each about 66 feet in length, and the other on the east side of Seventy-sixth street, the corresponding sides of that triangle being each about 42 feet in length. A freight-house of the railway company about 250 feet in length, is situated on the north-easterly side of its tracks, about 100 feet north of the northerly point of the triangle on the north side of Seventy-sixth street. On the south-westerly side of the right of way of this company is the right of way of the Pittsburg, Ft. Wayne and Chicago Railway Company.

The petition alleges that, on the 23d day of March, 1891, the city council of the city passed an ordinance providing that Chauncey avenue be extended across the rights of way of these two railway companies, and sets out a copy of the ordinance. That ordinance provides for an extension of the avenue as already stated, and that the improvement be made and the cost of it paid for by special assessment to be levied upon the property benefited thereby, to the amount the same might be legally assessed therefor, and the residue to be paid by general taxation, in accordance with article 9, of the general law in relation to the incorporation of cities and villages, and it required the corporation counsel to file a petition in the Superior Court of Cook county, in the name of the city, praying that the just compensation to be made for private property to be taken or damaged by the improvement be ascertained by a jury, and to file a supplemental petition in accordance with the provisions of section 53, of article 9, of the statute.

The petition, after setting out the ordinance, and specifically describing the land to be taken, prayed that the two railway companies be made parties defendant and be summoned, and that the property described, or so much thereof as might be necessary, be condemned for the improvement specified in the ordinance, and that the just compensation to be made for the private property to be taken or damaged be ascertained

33—148 Ill.

by a jury, in the manner provided by law, and that such other proceedings be had as the nature of the case might require.

The Lake Shore and Michigan Southern Railway Company, prior to the trial, entered its motion to dismiss the petition on the ground that it contained no allegation that compensation for the property sought to be taken or damaged could not be agreed upon, or that any attempt had been made to agree upon the compensation before the petition was filed, and for that reason that it was insufficient to confer jurisdiction. This motion was overruled, and an exception to the ruling was duly preserved by the railway company. Afterward the company objected to being required to go to trial until the petition showed that an attempt had been made by the city of Chicago to adjust the compensation and damages for property to be taken and damaged. This objection was also overruled, and the trial was ordered to proceed, and to this ruling the railway company also excepted.

An order was entered that the cases of the two defendants be tried separately, and by agreement of the parties, the case as to the Lake Shore and Michigan Southern Railway Company was submitted to the court for trial without a jury, and at such trial the court, after hearing the evidence, found that the just compensation to be paid to that company for the occupation by Chauncey avenue of so much of its right of way as would be included between the east and west lines of the avenue extended across the right of way was one dollar. To this finding the railway company excepted. The court thereupon rendered judgment in accordance with its finding, and ordered that, upon payment by the city to the county treasurer of Cook county, for the use of the railway company, of the sum of one dollar, the city should have the right to take possession of the property condemned for the purposes set forth in the petition. To reverse that judgment, the railway company has appealed to this court.

The first point made is, that the petition was insufficient to confer jurisdiction on the Superior Court, because of its failure to aver that the compensation to be paid for or in respect of the property sought to be appropriated or damaged for the purposes of extending the avenue, could not be agreed upon by the parties interested, as is required by the second section of the statute in relation to Eminent Domain. That this allegation, or the allegation that the owner of the property is incapable of consenting, or that his name or residence is unknown, or that he is a non-resident, is necessary, or even jurisdictional, in case of a petition filed under the provisions of the Eminent Domain Law, clearly results from the language of section 2 of that law, and we have so held in several cases. *Reed* v. *O. & M. Ry. Co.* 126 Ill. 48; *Lieberman* v. *Chi. & S. S. R. T. R. Co.* 141 id. 140. In the following cases arising under other similar statutes the same rule is recognized: *C., B. & Q. R. R. Co.* v. *Chamberlain,* 84 Ill. 333; *Bowman* v. *V. & C. Ry. Co.* 102 id. 459; *Chaplin* v. *Highway Commissioners,* 129 id. 651.

But the petition in this case is not filed under either of the statutes referred to in the foregoing decisions, but under the provisions of article 9, of the city and village act. Sections 4 and 5 of that article prescribe the form and substance of petitions to be filed thereunder, and they contain no requirement that such petitions shall aver a failure by the parties to agree upon the compensation to be paid, or anything on that subject. Section 4 provides that when any ordinance is passed by the legislative authority of any city or village, providing for the making of any local improvement which will require that private property be taken or damaged for public use, the city or village shall file a petition in some court of record of the county, praying that "the just compensation to be made for private property to be taken or damaged for the improvement or purpose specified in the ordinance, shall be ascertained by a jury." Section 5 provides that such petition

shall contain a copy of the ordinance, duly certified by the clerk under the corporate seal; a reasonably accurate description of the lots or parcels of land and property to be taken or damaged, and the names of the owners and occupants thereof, so far as known to the board or officer filing the petition, and where any known owners are non-residents of the State, stating the fact of such non-residence.

The petition in this case seems to have complied fully with these requirements, and we are unable to see how its sufficiency can be successfully challenged. The contention, however, is, that article 9 of the city and village act and the statute in relation to Eminent Domain are *in pari materia* and should be construed together, and that by such construction, all the provisions of section 2 of the last named statute must be treated as though they were incorporated into and formed a part of article 9 of the city and village act. The rule undoubtedly is, that statutes *in pari materia* should be construed together, as though forming one body of law, and where there are seeming inconsistencies between the two statutes, they should be so construed, if possible, as to give to each its appropriate effect. But an application of that rule of construction does not, as we think, produce the result contended for. The statute in relation to Eminent Domain provides a general mode applicable to all cases, for the exercise of the right to take or damage private property for public uses by any corporate or municipal authority, public body, officer or agent, person, commission or corporation. In all condemnation proceedings instituted under that statute, its provisions must undoubtedly be held to apply. But the Legislature has seen fit, by the ninth article of the city and village act, to provide an independent and somewhat different mode of proceeding in cases of the taking or damaging of private property by cities and villages for local improvements. That it had the power to do this will scarcely be questioned. But the intention to provide a different mode of procedure in cases of condemna-

tions by municipal corporations would be wholly defeated if, by construction, the two statutes should be practically amalgamated, so as to make all the provisions of one apply to and become a part of the other. Such construction would defeat rather than give effect to the legislative will.

There are what would seem to be sufficient and very plain reasons why the provision requiring the party seeking to condemn, to show an inability to fix the just compensation to be paid, should not apply to municipal corporations. It is doubtful, in the first place, whether such corporation has the power, by private arrangement or agreement with the property owner, to fix the amount of the compensation to be paid, especially in view of the fact that such compensation, when ascertained, is not ordinarily paid by the corporation itself, but is imposed, by way of assessment or special tax, upon the contiguous property or the property deemed to be benefited. A power to make a settlement by private negotiation which will thus become binding upon other parties who can have no voice in the negotiation will not be readily implied, and we are aware of no statute by which it is expressly conferred upon such corporations or any one or more of their officers. But if the power exists, it is manifestly an extremely delicate and dangerous one to be committed to municipal officers. Since whatever is privately agreed upon between them and the owner of the property sought to be taken becomes binding upon the owners of the property deemed to be benefited, the door would be open for frauds and oppressions upon such property owners for which they could have no remedy. The Legislature doubtless deemed it wiser that, in proceedings of this character, the estimate of the compensation to be paid should in all cases be left to the decision of an impartial jury, and it is probably for that reason that, in the statute providing a mode for the condemnation of private property by municipal corporations for local improvements, the provision requiring an effort to liquidate the amount of compensation by private agreement

to be made as a condition precedent to the exercise of the right of eminent domain, was omitted. Unquestionably many of the rules prescribed by the Eminent Domain Act must be held to apply to condemnations under article 9 of the city and village act. See *Harwood* v. *City of Bloomington*, 124 Ill. 48. But for the reasons above stated, we are of the opinion that the provisions of section 2 of the former act, sought to be invoked in this case, have no application.

The errors assigned upon which the railway company chiefly relies call in question the rulings of the court in relation to the admission of evidence. Only one witness testified on behalf of the city as to the amount of the compensation to which the company would be entitled by reason of the extension of Chauncey avenue across its right of way, and his testimony was, in substance, that, considering the matter without reference to such expenditures as the railway company might be put to in the performance of its public duties, and in complying with police regulations, the compensation to which it would be entitled would be only nominal. The railway company then called witnesses and offered to prove by them the expense to which it would be put in the construction of the crossing and its approaches; and also the cost of erecting gates and the house and machinery for operating them; also the annual expense of a gate-keeper, and of keeping the gates, machinery and crossing in repair. This testimony, on objection on behalf of the city, was excluded by the court.

In *Chi. & N. W. Ry. Co.* v. *City of Chicago*, 140 Ill. 309, we held that the railway company was required to incur these various expenditures, where a street is extended across its right of way, in obedience to the police regulations of the State, and therefore that they were matters for which the company was not entitled to compensation. We still adhere to the rules established by that decision, and need only refer to the discussion of these questions which will be found in the opinion delivered in that case. As these expenditures were

all matters for which the railway company was entitled to no compensation, there was manifestly no error in excluding all evidence in relation to them.

Many questions were put to the witnesses by counsel for the railway company which, being objected to on behalf of the city, were excluded. Some of them were defective in form and others called for matters which were immaterial. To discuss them in detail would unduly extend this opinion. We have examined them however with care, and are of the opinion that, as to all material matters, the witnesses were permitted to testify fully. At all events, our attention is not specifically called by counsel to any rulings in that behalf which seem to us to be erroneous.

It is also contended that the judgment of the court awarding to the railway company only nominal damages is contrary to the preponderance of the evidence. Some evidence was introduced by the company tending to show that if Chauncey avenue should be extended across its right of way, the cost of transacting the company's business at that point would be materially increased, and as the public would thereby acquire the right to occupy the crossing a portion of the time for the purpose of passing along the avenue, the business of the company would necessarily to some extent be interrupted, and its capacity to do business correspondingly diminished. As these results would follow merely because of the necessity which would be imposed upon the company to obey the police regulations of the State, they furnish no ground for compensation or damages. Furthermore, the loss to the company's business from these causes would be too uncertain and speculative to be made a factor in the assessment of compensation. *C. & A. R. R. Co.* v. *C. & J. L. Ry. Co.* 105 Ill. 388; *C. & N. W. Ry. Co.* v. *City of Chicago, supra.*

Some of the witnesses testify to a depreciation, of a certain sum per square foot, in the cash value of so much of the company's right of way as is included in the two triangular pieces

of land included in Chauncey avenue and lying, one east and the other west, of Seventy-sixth street, and the estimate of depreciation thus made if adopted as the basis of computation, would have resulted in the award of a substantial compensation. It is evident, however, the company's use of these two pieces of ground as parts of its right of way is not diminished or interfered with by the opening of the avenue, except so far as the company is subjected to a greater extent to the control of police regulations. It thereby assumes new relations to the public, and becomes obligated to adopt and observe new measures for the preservation of the public safety. These two tracts still remain as before, to all intents and purposes, a part of the right of way, and the company's right to use them for that purpose will ordinarily be paramount. It is evident that the testimony of the witnesses as to the depreciation in value of these two pieces of land is based, not upon any impairment of the company's right of way, or any anticipated interference by the public with its use for the purpose of running the company's trains over it, but solely upon the additional burdens to which the company will be subjected in the matter of police regulations by the opening of Chauncey avenue across the right of way. As these burdens can not be taken into account, the estimate by the witnesses of the depreciation of value proceeded upon unsound and erroneous principles, and the result was therefore one which the court was not bound to accept as true and reliable. We think the finding of the court as to the amount of compensation is sustained by the evidence.

After carefully considering the entire record, we are of the opinion that it contains no material errors, and the judgment of the Superior Court will accordingly be affirmed.

*Judgment affirmed.*