CITY OF PARIS, Appellee, *vs.* THE CAIRO, VINCENNES AND
CHICAGO RAILWAY COMPANY *et al.* Appellants.

*Opinion filed December 21, 1910—Rehearing denied Feb. 8, 1911.*

1. RES JUDICATA—*when injunction decree is not res judicata of
right of city to extend street across railroad.* A decree enjoining
a city from tearing down an overhead bridge over a railroad and
cutting down the grade of the street approaching such bridge is
not *res judicata* of the city's right to extend the street across the
tracks by condemnation, where the railroad company contended,
and the decree so found, that the street had never existed or been
extended across the company's right of way, but that the city had
used the bridge connecting the portions of the street on each side
of the right of way as a mere licensee.

2. SAME—*when railroad company is estopped to claim the con-
demnation proceeding is a mere attempt to change grade of street.*
A railroad company which has obtained a decree enjoining a city
from tearing down a bridge over the company's tracks and cutting
down the grade of the street upon the theory that the street had
never existed, or been extended, across the company's right of way,
is estopped to claim that a subsequent condemnation proceeding by
the city is not an attempt to extend the street across the company's
tracks but is merely an attempt to change the grade of the street.

3. RAILROADS—*company takes right of way subject to right of
public to extend streets across it.* Every railroad company takes
its right of way subject to the right of the public to extend streets
across the same, and the question whether a public necessity ex-
ists for extending a street across a railroad right of way is purely
a legislative one, of which the ordinance providing for such exten-
sion is conclusive.

4. EMINENT DOMAIN—*where proposed use is public, courts will
not inquire into necessity or propriety.* Courts have the right to
determine whether the use to which property proposed to be taken
is to be devoted is public or private in its nature, but when the use
is public, courts cannot ordinarily inquire into the necessity or pro-
priety of exercising the right of eminent domain.

5. SAME—*when witnesses are competent to testify to damages
to railroad property.* In a condemnation proceeding by a city to
extend a street across railroad tracks, witnesses who testify that
they are thoroughly familiar with the use of the property by the
defendant may testify upon the question of damages to such use,
even though they are not familiar with the general methods of con-
ducting railroads.

6. SAME—*loss of storage room for cars is an element of consequential damage.* If any of the railroad tracks at the point where a street is to be extended are used as a place for storage of cars, the opening of such street will necessarily deprive the railroad company of such use, and the loss of the storage room is therefore a proper element of damage.

7. SAME—*what consequential damages may be allowed where street is extended across railroad.* Where a proper cross-petition for damages is filed by a railroad company in a condemnation proceeding by a city to extend a street across the company's tracks, proof of all damages to the property of the company not actually taken, occasioned by the extension of the street, should be admitted, except as to damages resulting from the enforcement of police regulations or delay in the operation of trains with due care and caution in approaching and crossing the street.

8. SAME—*time lost in switching operations is not an element of damage.* In a condemnation proceeding by a city to extend a street at grade across railroad tracks and yards, the time lost in switching operations and movement of trains by reason of the extension of the street is the result of an observance of the police regulations of the State, and is not such an element of consequential damages as entitles the company to recover.

9. SAME—*expense of excavating earth may be an element of damage.* If a railroad company claims that the extension of a street across its tracks will require it to excavate a quantity of earth in order to properly operate its railroad at that point, it is entitled to prove that fact under its cross-petition for damages to property not taken; but the petitioner is entitled to show whether or not such excavation will be necessary.

10. SAME—*what matters cannot be considered as elements of damage from extending street across tracks.* The cost of grading approaches, planking between rails, constructing gates or hiring flagmen, the stoppage or slow movement of trains, increased danger of accident and the cutting of trains for the crossing, are not proper elements of consequential damages occasioned by the extension of a street across a railroad company's tracks; but the changing of the tracks to conform to the grade of the street is a proper element of damages.

APPEAL from the Circuit Court of Edgar county; the Hon. W. B. SCHOLFIELD, Judge, presiding.

GEORGE B. GILLESPIE, (L. J. HACKNEY, SHEPHERD & TRODGON, and GILLESPIE & FITZGERALD, of counsel,) for appellants.

WILBER H. HICKMAN, HENRY S. TANNER, and JOSEPH E. DYAS, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

The appellee, the city of Paris, filed a petition in the circuit court of Edgar county to extend, by condemnation, Buena Vista street across a certain railroad right of way owned by the appellant the Cairo, Vincennes and Chicago Railway Company but used exclusively by the appellant the Cleveland, Cincinnati, Chicago and St. Louis Railway Company as lessee. Appellants filed a motion to dismiss the petition, which, after a hearing thereon before the court, was denied. The appellants then filed a cross-petition for the ascertainment of damages to property not taken. By agreement the hearing was had before the court without a jury and resulted in a judgment assessing the just compensation to be paid for the land proposed to be taken at $150, and authorizing the city to enter upon, use, occupy and control the same for the purposes of a street upon payment of that amount. Appellants have prosecuted this appeal from that judgment and assign various grounds for reversal.

The line of railway owned by appellants was constructed in 1853 or 1854 and extended east and west through what was then the village of Paris. The village had about five hundred inhabitants and did not include the proposed crossing. Afterwards the village was organized as a city, the limits were extended so as to embrace the land in question, and Buena Vista street was laid out south of the railroad right of way. Subsequently, during the year 1884, that portion of Buena Vista street north of the right of way was laid out, and by agreement between the city and the railroad company then owning the right of way, the railroad company constructed a bridge over the railroad tracks on a line with Buena Vista street and the city constructed dirt approaches on both sides of the right of way from the street to the bridge, thus furnishing a continuous

passageway for travelers upon the street. This bridge, and the approaches thereto, have been used by the public from 1884 to the present time, the railroad companies owning the right of way having kept the bridge in repair. Paris is now a city of about ten thousand inhabitants, and that portion of the city in the vicinity of the proposed crossing is being built up with residences. Appellants' line of railway over which it is sought to extend Buena Vista street is known as the main line, and extends from the city of Indianapolis, in the State of Indiana, to the city of St. Louis, in the State of Missouri. Appellants have another line extending from the city of Danville to the city of Cairo, in this State. It forms a junction with the main line at Paris and extends south through the city, crossing the main line a considerable distance west of Buena Vista street. A large quantity of freight is transferred at this junction. The first grade crossing east of Buena Vista street is 1000 feet distant, and the first grade crossing west of that street is about 1700 feet distant. The yards, switches and commercial tracks, as well as the passenger and freight depots and the transfer platform, are located between the bridge above mentioned and the first grade crossing west thereof. Four tracks and a switch point leading to eight tracks in the railroad yards immediately west of Buena Vista street are located under the bridge, and in switching cars to and from and in the railroad yards it is necessary to pass under the bridge. The stock yards are immediately east of the bridge and on the north side of the right of way. The north track is used principally for loading and unloading stock at these yards, and that portion of the track under the bridge is frequently used for storing cars. The railroad at the proposed crossing runs in a cut about eight feet below the natural surface of the land.

On July 20, 1908, the city council of the city of Paris passed an ordinance changing and establishing the grade of Buena Vista street for a distance of 250 feet north and

500 feet south of the appellants' main track, the established grade at the main track being the present grade of that track.   A resolution was adopted at the same meeting providing for service of notice upon the appellant the Cleveland, Cincinnati, Chicago and St. Louis Railway Company to conform its right of way to the grade established by the ordinance.   The city soon afterwards entered into a contract with a contractor for the removal of the approaches to the bridge and the reduction of the grade of the street in accordance with the ordinance.   The Cleveland, Cincinnati, Chicago and St. Louis Railway Company, being a foreign corporation, at once filed a bill in the United States Circuit Court for the Eastern District of Illinois to restrain the city of Paris, the city council and the contractor from carrying out this contract, and from destroying, removing or interfering with the abutments and the bridge, and from attempting to change the grade of the street or otherwise interfering with the property of the railway company.   The defendants to the bill were duly served with process but failed to appear in the cause, and a decree *pro confesso* was entered in accordance with the prayer of the bill.   The findings of the decree, so far as necessary to be here shown, were substantially the same as the facts hereinbefore recited, and in addition thereto, that the overhead bridge had been in use for more than twenty-five years and that the city had a right of way over said bridge by user or prescription; that the railway company had ever been willing to maintain and renew the bridge with safe, sufficient and suitable materials for the accommodation of the public; that there was no public necessity requiring the reduction of the bridge and the establishment of a grade crossing; that the city of Paris was not acting from public motives nor for the public welfare but at the instance and in the interest of one Hardy and contrary to the welfare of the public, and that it was to the interest and for the welfare of the city that said overhead crossing should be maintained as the

railway company proposed to maintain it. Thereafter, on December 7, 1908, the city council of the city of Paris passed an ordinance providing that Buena Vista street be opened by condemnation, and that the land involved in this suit, being a strip 51 feet wide and 305 feet long, across the right of way of appellants, be taken for such street purposes, and directing the city attorney to institute the necessary legal proceedings for the condemnation of the same. This proceeding was thereafter, on February 15, 1909, begun by the filing of the petition in the circuit court of Edgar county, and resulted in a judgment assessing $150 as the compensation to be paid appellants for the use of the crossing as a street by the city.

Appellants first urge that the petition should have been dismissed for the reason that there was no necessity for the opening of a street at this place; that the proceeding is a mere attempt to change the grade and not to extend the street across the right of way, as the city already has a right of way over the railway by user, and that the decree of the United States circuit court is *res judicata* as to all the matters presented by the petition.

The appellant companies hold their right of way subject to the right of the public to extend highways, streets and alleys across the same. Buena Vista street has never been laid out across the appellants' right of way. Whether there exists a public necessity for the extension of this street across appellants' right of way is purely a legislative question, and the ordinance passed by the city council of Paris providing for the extension of the street is decisive of that question. Courts have the right to determine whether the use for which property is proposed to be taken is public or private in its nature, but when the use is public, as in this case, courts cannot inquire into the necessity or propriety of exercising the right of eminent domain. (*Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake,* 71 Ill. 333; *Illinois Central Railroad Co.* v. *City*

*of Chicago,* 141 id. 586; *Chicago and Alton Railroad Co.*
v. *City of Pontiac,* 169 id. 155.)   In the case last cited, as
well as in *Chicago and Northwestern Railway Co.* v. *City
of Morrison,* 195 Ill. 271, it was intimated that the courts
might interfere in an extreme case of oppression or out-
rage, but the situation here is not such as would warrant us
in taking any cognizance of the question of the necessity
or expediency of the extension of Buena Vista street across
the right of way of appellants.

As to the other grounds urged as to why the petition
should be dismissed, the lessee railway company contended
in the United States circuit court that Buena Vista street
had never been extended or laid out across the right of
way, and that the public had been allowed by mere license
to travel across the railway right of way by means of the
overhead bridge, and the decree of the United States court
found such to be the fact.   That decree found that Buena
Vista street had never been extended, and did not exist,
over and across the railway right of way, and that the
right of the public to pass over the right of way of the
appellants by means of the overhead bridge was a mere li-
cense.   That having been the contention of the lessee rail-
way company in the United States court as well as the
finding and decree of that court, appellants are in no posi-
tion now either to say here that this is not an attempt on
the part of the city of Paris to extend Buena Vista street
across the right of way but a mere attempt to change the
grade of that street, or that the decree of the United States
court is *res judicata* as to the matters in issue here.   If, as
the court decreed in the case in the United States court,
Buena Vista street did not exist and never had existed
across the railway right of way, appellants cannot now, in
attempting to avail themselves of the advantage secured by
reason of that decree, contend here that as a matter of
fact a street did exist by way of an overhead crossing, and
that therefore, having once extended the street by contract

across appellants' right of way in that manner, the city has exhausted its power and is now estopped to extend it in any other manner. Neither can they successfully contend that the decree of the United States court is *res judicata* as to the matters involved here, as that decree found that Buena Vista street never had existed or been extended across the right of way of appellants, whereas in this proceeding appellee is endeavoring by condemnation proceedings to extend that street across such right of way at the point where the United States court held it never had been extended. The motion to dismiss was properly denied.

Appellants contend that the court erred in the exclusion of testimony offered in their behalf on the hearing, and also in passing upon certain propositions of law submitted.

The evidence offered by petitioner was wholly confined to the question whether the location of Buena Vista street across the right of way of appellants would result in damages to the use of the property of appellants to be occupied by Buena Vista street. This proof was made by various citizens of Paris. Propositions of law were submitted by appellants touching the qualifications of the witnesses to testify as to such damages, the theory being, that only such witnesses as were shown to have had special and practical knowledge and experience in matters pertaining to the operation of a railroad were qualified to express any opinion as to the damages sustained. The witnesses called on the part of the appellee testified, in answer to preliminary questions, as to their means of knowledge and that they were thoroughly familiar with the use of this property by appellants, and were therefore qualified to give their opinion on the question of damages. The fact that they were not familiar with the methods of conducting railroads does not necessarily render their testimony incompetent. *Illinois Central Railroad Co.* v. *City of Chicago,* 169 Ill. 329.

Appellants objected to the question put to each of the witnesses for appellee as to the amount of damages sus-

tained by appellants by reason of the taking of the strip of land in question for the purposes of a street. The question so asked of a number of the witnesses for the appellee was substantially as follows: "Eliminating the cost of grading the approaches, or of changing the tracks to conform to the grade of the street, or planking between the rails, the making of gates or hiring of flagmen, stoppage or slow movement of trains, increased danger of accident, cutting of trains over crossings, what, in your judgment, would be the amount of decrease in the value of defendants' property for railroad purposes which would be caused by the use of the strip in question for the purposes of a street, such use for the purposes of a street being subject to the use by the defendants of said strip for railroad purposes?" This question was objected to upon the ground that it excluded from the consideration of the witness elements of damage which should properly be considered and for which appellants were entitled to receive compensation for damages to the use of their property as railway property. This objection should have been sustained. If the laying out of this street would make it necessary for appellants to change the tracks of the railway to conform to the grade of the street, that was a proper element of damages and should not have been eliminated. The remainder of the question was proper and did not eliminate any element of damage which was proper to be considered. (*Chicago and Northwestern Railway Co.* v. *City of Chicago,* 140 Ill. 309; *Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago,* 148 id. 509; *Chicago and Northwestern Railway Co.* v. *City of Morrison, supra.*) The same question was asked the other witnesses for petitioner, except that it also eliminated from the consideration of the witnesses the loss to appellants of the use of a portion of the proposed street as a place for standing or storing cars as an element of damage. The objection to this question, which was the same as that made to the other question noted,

should also have been sustained for the additional reason that if any of the tracks of appellants' railway at the point of the proposed intersection of the street were used as a place for the storage of cars, the opening of the street would necessarily deprive appellants of that use, and the loss of the storage room was a proper element of damage. *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 151 Ill. 348; *Chicago and Northwestern Railway Co.* v. *City of Morrison, supra.*

On the question of consequential damages, or the damages which the appellants would sustain to the property not actually taken for the street, the court expressly confined the proof to the switch yards of appellants in the immediate vicinity of the lands being condemned, and, upon objection, excluded all proof of damages to any of the property of appellants not taken, other than that contained in said switch yards. Under their cross-petition appellants were entitled to prove any damage sustained to property not taken, and we are unable to see upon what theory the court confined this proof to the switch yards alone. If appellants would sustain any damage to their railway aside from the property actually taken and aside from the damage to the switch yards, if any, they were entitled, under the cross-petition, to prove it, and it was error for the court to exclude this testimony. (*Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago,* 151 Ill. 359; *Chicago, Burlington and Quincy Railroad Co.* v. *City of Naperville,* 166 id. 87.) The court, in passing upon the written propositions of law submitted by appellants, held the law to be that the defendants were entitled to recover their just compensation, not merely for the strip of land taken for the purposes of Buena Vista street, but, in addition, such further sum as the evidence might show would justly compensate them for damages to their property not taken. This holding as to the law was inconsistent with the ruling of the court upon the admissibility of the testimony. The law

is properly stated in the propositions so held by the court, and proof as to all damages to the property of the railroad not taken, occasioned by the extension of this street, should be admitted, except such as would be occasioned by the enforcement of police regulations, or by delay rendered necessary by the common law duty of appellants to operate and manage their engines and trains with due care and caution on approaching and passing over said street.

Appellants attempted to prove that the extension of this street as proposed would necessitate the excavation of a considerable amount of earth in the vicinity of the proposed crossing, but outside of the street lines, in order to effect a proper operation of the railway. This testimony was excluded, an objection having been sustained to each question asked along this line. It does not appear from the record where it is claimed this excavation would become necessary or why it would become necessary. If the extension of this street would necessarily require the excavation or the removal by the appellants of any quantity of earth for the proper operation of their railway, they would be entitled, under their cross-petition, to prove that as one element of damage, and appellants should have been permitted to show whether or not they would necessarily be put to this expense.

Appellants complain of the action of the court in disregarding practically all of the testimony offered in their behalf as to the damages to the switch yards occasioned by the extension of this street. The damages to the switch yards testified to by the witnesses for the appellants ranged from $20,000 to $30,000, and were based almost wholly upon the value of the time which would be lost in the switching operation and movements of trains by reason of the establishment of a grade crossing at this point. The lost time testified to was that which would be occasioned by the observance of the police regulations of the State, and was not such an element of damage as appellants were

entitled to recover for. Appellants are subject to the police power of the State, and are not entitled to recover damages on account of having to stop their trains at any crossing in order to comply with the statute. Every railroad company takes its right of way subject to the right of the public to extend streets across it, and when any street is so extended across the right of way, the railroad company is not entitled to compensation for such damages as result from its compliance with the police regulations of the State. *Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway Co.* 105 Ill. 388; *Chicago and Northwestern Railway Co.* v. *City of Chicago, supra; Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago,* 148 Ill. 509.

For the error of the court in excluding testimony on the question of damages to the property of appellants not taken, the judgment of the circuit court is reversed and the cause remanded.                    *Reversed and remanded.*