THE COMMISSIONERS OF HARTWELL DRAINAGE AND LEVEE DISTRICT, Appellees, *vs.* E. R. MICKELBERRY, Appellant.

*Opinion filed February 20, 1913.*

1. DRAINAGE—*the power to levy tax must be strictly construed.* The levy of drainage assessments has for its ultimate object the taking of the property of the individual owner without his consent, and such power must be clearly conferred and strictly pursued, and any doubt as to the existence of the power must be resolved against those attempting to assert it.

2. SAME—*section 1 of act of 1911, concerning pumping stations, construed.* Section 1 of the act of 1911, (Laws of 1911, p. 297,) authorizing certain levee drainage districts to levy assessments for the construction, maintenance and repair of pumping plants, is by the terms of the last proviso in said section limited to such levee drainage districts as "have, or have at the inception of their organization, and keep and maintain, pumping plants or stations."

3. SAME—*when assessment for pumping plant cannot be levied.* Section 1 of the act of 1911 (Laws of 1911, p. 297,) does not authorize an assessment for the erection of a pumping plant and an annual assessment for its maintenance and repair in a levee drainage district organized before such act took effect, which was not organized for the purpose of establishing a pumping plant as part of its general scheme of drainage, and which has not, before said act took effect, established and maintained one.

4. SAME—*assessment should not include portion of tract taken for right of way.* It is error to levy a drainage assessment against an entire tract of land a portion of which has been taken for right of way for the drainage ditches. (*Morgan Creek Drainage District* v. *Hawley,* 240 Ill. 123, followed.)

5. SAME—*when changes by commissioners cannot be complained of.* Drainage commissioners have no power to make changes in the work materially increasing the burden upon the tax-payers without notice to them and an opportunity to be heard, but changes consisting of straightening ditches on lands of owners consenting thereto, thereby decreasing the cost of the work without decreasing the efficiency of the ditches, cannot be complained of by other land owners.

APPEAL from the County Court of Greene county; the Hon. THOMAS HENSHAW, Judge, presiding.

ANDERSON & MATTHEWS, for appellant.

F. A. WHITESIDE, and RAINEY & JONES, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

The commissioners of the Hartwell Drainage and Levee District, located in Greene county, filed a petition to the May term, 1912, of the county court of said county, under section 37 of the Levee act, for a special assessment. The petition alleged that the experience of said district had convinced the said commissioners that in order to reclaim the lands within the district and to realize the full benefit of the money already expended it would be necessary to do certain additional work, and that the special assessment sought to be levied was for the purpose of paying for such additional work. The additional work proposed to be done was the construction of additional ditches, drains and a large pumping station. Attached to the petition were maps, plans and specifications, both for the additional ditch work and also for the pumping station to be installed. The pumping station was estimated to cost $40,000 and the other contemplated improvements were estimated to cost $45,000, which was sought to be levied as an additional special assessment. Appellant, Mickelberry, who owns about 2800 acres of land in the district, appeared in obedience to notice and filed numerous objections to the assessment, all of which were overruled, and the court made an order confirming an assessment for $99,342, and also directed that an assessment for annual benefits be levied for the purpose of operating and keeping in repair the pumping plant and other works of said district mentioned in the petition. The commissioners proceeded to make an assessment roll, but before the assessment was made another petition was filed for the purpose of altering the plans of the work with reference to the ditches, which alteration was allowed by the court without notice to any of the land owners. The alteration consisted in a shortening of some of the ditches by taking out certain curves and reducing the excavation work 22,655

cubic yards. At the August term of the county court, 1912, the commissioners filed an assessment roll showing the assessment of each tract of land in the district for the amount of benefits on account of the construction of the ditches and the erection of the pumping plant, and also filed an assessment for annual benefits for the maintenance of the proposed work. The evidence heard on the preliminary hearing showed that the expense of maintenance and operation of the pumping station would be from $6000 to $10,000 per annum, depending upon the amount of rainfall. The amount assessed for annual benefits was from fifty-six cents to one dollar per acre. The lands of appellant were assessed for that purpose at the rate of fifty-six cents. The engineer's estimate shows that 47.9 acres of appellant's land were taken for ditches, and it is shown that the assessment is against the entire tract, without any deduction whatever for the land taken for right of way for ditches. Notice having been given for a hearing before a jury after the assessment roll was filed, Mickelberry appeared and again filed objections, all of which were overruled and the assessment roll and verdict of the jury were approved and confirmed by the judgment of the court. The jury assessed each tract of Mickelberry's land, a part of which was taken for right of way for ditches, as a full 40-acre tract. Each 40-acre tract of his land was assessed in the sum of $366.88 special benefits and $22.40 per year annual benefits. Mickelberry made a motion for a new trial, which was overruled. Proper exceptions were taken to the rulings of the court, and Mickelberry has prosecuted an appeal.

The numerous objections and assignments of error on the record may all be grouped under the following three heads: First, that the annual amount of benefits charged against the objector's land are illegal and without authority of law; second, that the right of way taken for ditches from the objector's land should have been deducted and the assessment made against the residue from the several tracts;

third, that the commissioners had no right to alter and change the plans of the proposed work without notice to the land owners.

The first objection questions the right of the appellees to levy an assessment for the purpose of maintaining a pumping station. An act of the legislature passed in 1907 purported to authorize drainage commissioners to levy an annual assessment upon the lands of the district, not exceeding sixty cents upon each acre of all the lands of the district, for the purpose of maintaining and operating pumping plants and for the making of necessary repairs on drains, ditches, etc. That act did not purport to authorize the construction of pumping plants but did purport to authorize the levy of an annual tax for the maintenance of pumping plants. In 1911 the above act was repealed, and in lieu thereof a new act was passed entitled "An act to provide for the erection, maintenance and operation of pumping plants in certain drainage and levee districts and to legalize and validate former proceedings, bond issues, indebtedness and expenditures in regard to, on account of, or with a view to the erection, maintenance and operation of such pumping plants." (Laws of 1911, p. 297.) It is under this act that the assessment for a pumping plant and for annual benefits for its maintenance is sought to be sustained. The question raised requires a construction of section 1 of the act of 1911. This statute has not heretofore been presented to this court.

The section in question is section 1, and is as follows: "That whenever the drainage commissioners of any drainage and levee district heretofore or hereafter organized under an act entitled, 'An act to provide for the construction, reparation and protection of drains, ditches, and levees across the lands of others for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts,' approved and in force May 29, 1879; as amended by an act approved June 30, 1885, in force

July 1, 1885; as amended by an act approved June 4, 1889, in force July 1, 1889; as amended by an act approved June 24, 1895, in force July 1, 1895; as amended by an act approved May 10, 1901, in force July 1, 1901; as amended by an act approved May 14, 1903, in force July 1, 1903; as amended by an act approved and in force May 20, 1907; as amended by an act approved and in force May 29, 1909; shall deem it necessary for the disposition of the surface water, seepage or rainfall in such districts, that one or more pumping plants be erected, maintained and operated, they may, with the approval of the county court of the county in which the district is located or organized, out of the funds raised, or to be raised, by special assessments on the lands of such district, and as a part of the drainage and levee work of the district erect, maintain and operate one or more such pumping plants in such district, and for the purpose of maintaining, operating and keeping in repair such plant or plants along with the levees, ditches and other works of such district, the annual amount of benefits levied and assessed against the lands of such district shall be in such amount as the county court in which said district is organized and which has jurisdiction over the said district shall find will accrue to the lands of said district by the maintenance and operation of the ditches, levees, pumping plant or plants and other works of said district, in accordance with the provisions of the said act entitled, 'An act to provide for the construction, reparation and protection of drains, ditches and levees across the land of others for agricultural, sanitary and mining purposes, and to provide for the organization of drainage districts,' as amended of the dates as hereinbefore set forth. And be it further enacted that section 1 of the said act of which this is an amendment, be and the same is hereby repealed; saving and reserving, however, any rights that may have heretofore accrued thereunder: *Provided,* the provisions of this act and each and every thereof, shall apply and

257 — 33

have force and vitality, solely and only in the case of 'levee drainage districts' so-called, organized under the so-called 'Levee Drainage act' by statute made and provided, and then only in those cases where said drainage districts have or have at the inception of their organization, and keep and maintain pumping plants or stations."

The district in question has no pumping plant, and it is contended by appellees that under the statute above quoted the power is conferred upon drainage districts organized under the Levee act to make a special assessment for the installation and maintenance of pumping plants. Unless the power to levy such assessment is conferred upon appellees by the statute above quoted it is not contended that such power exists at all under the law.

The assessment of drainage taxes, like the levy of all other taxes, has for its ultimate object the taking of the property from the individual owner without his consent. It is elementary that the power to levy and collect taxes must be clearly conferred and strictly pursued, and a well founded doubt as to the existence of the power must be resolved against those attempting to assert it. (*Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago,* 148 Ill. 509; *People* v. *Field,* 197 id. 568.) This principle is sometimes expressed as follows: If there is reasonable doubt as to the existence of any such power the presumption is that it does not exist. (Page & Jones on Taxation by Assessment, sec. 229, and cases there cited.) The statute under which the power to levy the present assessment is claimed to exist, in the first instance refers to "drainage and levee districts heretofore or hereafter organized" under certain acts, which are then referred to, and the provision is, that when the commissioners of such district "shall deem it necessary for the disposition of the surface water, seepage or rainfall in such districts, that one or more pumping plants be erected, maintained and operated, they may, with the approval of the county court

of the county in which the district is located or organized,
out of the funds raised or to be raised, by special assess-
ment," provide for the levy and collection of a tax for the
purpose of maintaining, operating and keeping in repair
such plant or plants, along with the levees, ditches and other
works, etc.  If the language already quoted were all of said
act it might reasonably be said that a tax to maintain and
operate a pumping plant could be levied in any drainage
district heretofore or hereafter organized, and that such
district might furthermore levy a tax for the purpose of
erecting such pumping plant where none had theretofore
been maintained.  There is, however, a proviso added to
said section which limits the operation of the general lan-
guage found in the preceding portion of the section.  First,
the act is limited solely and only to "levee drainage dis-
tricts" organized under the Levee Drainage act, and there
is still a further limitation that said act shall only apply
"in those cases where said drainage districts have or have
at the inception of their organization, and keep and main-
tain pumping plants or stations."  One of the purposes of
a proviso in a statute is to qualify or restrict general lan-
guage found in the enacting clause.  The proviso in this
statute excludes, absolutely, all districts organized under
what is known as the Farm Drainage act.  It also excludes
certain classes of drainage districts organized under the
Levee act.  One class that is excluded is such districts as
are hereafter organized and which do not in their incep-
tion provide for the establishment of a pumping station as
a part of the general scheme of improvement.  It also ex-
cludes entirely from its operation districts that have here-
tofore been organized and which have not heretofore,—that
is, before the act was adopted,—established or maintained
a pumping station.  If we suppose the existence of districts
heretofore organized under the Levee act which, although
without authority, have, in fact, installed and maintained
pumping stations, we will have discovered one class of

districts which is authorized by this act to continue the maintenance of such pumping stations and to levy annual benefits for their maintenance. We may well assume the existence of such districts, since the legislature manifestly by this act intended to make a provision by which such districts could continue to maintain and operate such pumping plants. There is no possible objection that we can think of, to the organization of a new levee district and conferring upon it the power to install and operate a pumping plant in connection with its scheme of drainage. Where a new district is to be organized and the conditions are such that proper drainage can only be had by the installation of a pumping plant, and the petition sets forth the facts and is accompanied by the proper estimates, plans and specifications, the property owners have a full opportunity to be heard upon all questions that may be properly considered in respect to any proposed scheme of improvement. The reason for the proviso thus clearly appears. The formation of a new district must originate with a petition signed by the requisite number of land owners within the territory. If the required number of petitioners can be obtained in a given district for the formation of a district, the general scheme of improvements of which includes the installation of a pumping plant, there would seem to be no valid objection to the organization of such a district; but where a district, as in the case at bar, is completely organized and is a going district, and it is sought to modify or add to the original improvement by the addition of a pumping plant, the preliminary petition required in the organization of the district is not provided for. These reasons may well be supposed to have operated upon the legislative mind in limiting the power to install and maintain pumping stations to two classes of levee districts,—that is, (1) districts heretofore or hereafter organized in which a pumping station constituted a part of the general scheme of improvements; (2) those districts or-

ganized under the Levee act which in some way, whether legally or otherwise, have heretofore established and maintained pumping stations. As we construe the section of the statute under consideration it must be limited to these two classes of districts, only. The appellee district does not fall within either of these classes. It was not organized originally for the purpose of establishing a pumping station as part of its general scheme of drainage, neither has it heretofore established or maintained a pumping station of any kind or character. The power of appellees to spread this assessment for the erection and maintenance of a pumping station does not exist and the assessment levied for such purpose is therefore illegal. Appellant's first objection should have been sustained.

The second objection is, that the assessment includes the land of appellant that had been taken for right of way for drainage ditches. Under the holding of this court in *Morgan Creek Drainage District* v. *Hawley,* 240 Ill. 123, this was error. The court erred in overruling this objection.

The third objection is, that material changes have been made by the commissioners in the location of the ditches without notice to the land owners. The evidence shows that the ditches as originally located had extensive curves in them before they reached appellant's land; that the changes complained of consisted in re-locating the ditches so as to obviate the curves. The effect of the changes was to reduce the amount of excavation 22,655 cubic yards. The ditches were not changed on appellant's land. The commissioners have no right, under the statute, to do any act materially affecting the character or extent of the cost of the improvement without notice to the land owners and an opportunity to be heard. (*Badger* v. *Inlet Drainage District,* 141 Ill. 540.) Section 12 of the Levee act authorizes the making of changes in the "location, plan or extent of any levee, ditch or other work." This permits changes to be made that do not substantially increase the burdens of

the tax-payers. The changes complained of in the case at bar were favorable to the tax-payers. They lessened the cost, and it is not claimed that the decrease was at the expense of the efficiency of the ditches. The persons on whose land the changes were made consented thereto. We do not regard the changes complained of as substantial or material in so far as the interest of appellant is concerned. There was no error in overruling this objection. The other objections, however, go to the merits of this proceeding and necessarily result in a reversal of the judgment below.

The judgment of the county court of Greene county is reversed and the cause is remanded.

*Reversed and remanded.*